UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER GATLIN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No.4:25-cv-00043-ACL |
| MATTHEW WELLE, et al. | ) ) ) |
| Defendants. | ) |

**PLAINTIFF'S OPPOSITION TO DEFENDANT
MATTHEW WELLE'S MOTION TO DISMISS**

Defendant Matthew Welle, who was employed by the St. Louis Metropolitan Police Department, violated every rule in the police procedures book when he coerced a victim into changing his response at a photo line-up. Prior to the line-up, Welle violated department procedures intended to safeguard innocent people like Plaintiff Christopher Gatlin from being unfairly investigated. Welle now tries to avoid any responsibility by filing his Motion to Dismiss the. ECF No. 25. Defendant Welle's Motion to Dismiss (ECF No. 26) should be denied.

**FACTS**

Defendant Welle was investigating the assault of a man on a Metrolink platform in December 2020. Plaintiff's First Amended Complaint[1] ("FAC"), ECF No. 3 at ¶¶ 12-23. Welle worked with Matthew Shute of the St. Louis County Police Department on the investigation. *Id.* at ¶¶ 2, 3, 15. Soon after the December 2020 assault, the victim M.F. informed Welle and Shute that he did not remember what his assailant looked like because of brain damage he suffered. *Id.* at ¶¶ 16-21. Welle and Schute obtained video camera footage from a bus that was nearby the scene

---

[1] Plaintiff's First Amended Complaint (ECF No. 1) changed only one issue: the correct name of Defendant Cody Goodwin.

1

of the attack. *Id*. at ¶ 19. Welle and Schute provided the photo to local homeless shelters, which informed the officers that one of the suspects was likely homeless. *Id*. at ¶ 21.

After deeming the case closed for lack of leads, Shute and Welle decided more than eight months later to upload the bus surveillance photo into a facial recognition software workstation owned by the City of St. Louis. *Id*. at ¶¶ 24-30. Welle had no training on how to use the software. *Id.* at ¶ 35. The photo uploaded by Welle was blurry, taken from a distance, and taken from an angle above the suspect's face. *Id*. at ¶ 36. The suspect's face was also obscured in the photo by a hooded sweatshirt covering his forehead and a mask covering his chin. *Id*. The program, called SMRT, warned Welle that this photo was not likely to be useful for several reasons, including the resolution, the obstructions on the face, all features of the face not being present. *Id.* at ¶¶ 40-41. The user manual also warned officers that security cameras were unreliable. *Id.* at ¶ 42. SMRT also contained multiple safeguards and warnings for investigating officers which Welle ignored. *Id*. at ¶¶ 47- 47 (c). Based *only* on the misuse of the facial recognition tool, Welle decided Mr. Gatlin was the assailant. *Id*. at ¶ 46.

Despite his misuse of the SMRT tool and his disregard of the warnings on the program, Defendant Welle took no other steps to verify Mr. Gatlin's involvement in the crime before Welle took six photos to a rehabilitation unit where the victim, M.F., lived. *Id*. at ¶ 55. Defendant Welle immediately began to talk to M.F., even though Welle and Shute brought a "blind administrator" who was supposed to interact with M.F. *Id*. at ¶¶ 54, 57. Welle also hinted that the correct suspect was one of the six photos. *Id*. at ¶¶ 57-58. These are both violations of department policies and national best practices. *Id.* M.F. told the officers that he had suffered a traumatic brain injury because of the assault. M.F. told Welle and the other officers that his memory "[was] crap." *Id*. at

2

¶ 63. M.F. then identified a photograph which was not Mr. Gatlin. *Id*. at ¶ 64. This suspect looked nothing like Mr. Gatlin – especially as to complexion. *Id*. at ¶ 65.

Defendant Welle then began to push M.F., telling him to "think about the…complexion" of the assailant. *Id*. at ¶ 66. This violated national best practices and SLMPD general orders, which requires officers not to provide any feedback to the witnesses. *Id*. at 69. M.F. relented and, on his second try, picked a person with a different complexion; Welle and the officers accepted his identification without further challenge and left. *Id*. at ¶ 72. This was how Welle obtained what he deemed a "positive" identification of Mr. Gatlin. The whole interaction is captured on bodycam.

Welle proceeded to issue a "Wanted" for Gatlin's arrest. *Id*. at ¶¶ 82-83. Schute and Welle arrested Mr. Gatlin on August 14, 2021. *Id.* at ¶ 84. Mr. Gatlin faced more than two years of prosecution, more than a year of incarceration, and experienced significant pain and suffering. *Id*. at ¶¶ 96, 107. The charges against him were eventually dismissed. *Id*. at ¶ 107.

## ARGUMENT

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff is only required to plead enough facts to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Cole v. Homier Distrib. Co*., 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Iqbal* at 678)

**I.    Plaintiff's First Amended Complaint Sufficiently States a Claim for Reckless Investigation (Count 2) Against Welle.**

    **A.    Plaintiff Alleged a Constitutional Violation for Reckless Investigation Against Welle.**

Defendant's Motion to Dismiss misunderstands the law and Plaintiff's Complaint. Defendant Welle spends two pages discussing a claim for unduly suggestive identification

3

procedures violating the right to a fair trial. ECF No. 26 at 9-10. However, Plaintiff's FAC made no such free-standing claim. *See* FAC. The case Defendant cites to, *Briscoe v. Cnty. of St. Louis, Missouri*, 690 F.3d 1004 (8th Cir. 2012), clearly delineates the right to a fair trial claim (*Id*. at 1012) with a claim alleging a reckless investigation (*Id*. at 1014.) Because Plaintiff's case was dismissed before trial, he has no claim regarding a right to a fair trial and has not pled one.

Plaintiff does, however, make a claim against Welle for violating Mr. Gatlin's due process right to be free of reckless investigations. *See Briscoe,* 690 F.3d at 1014 (8th Cir. 2012) (quoting *Amrine v. Brooks*, 522 F.3d 823, 833 (8th Cir. 2008) ("This court "recognized a substantive due process cause of action for reckless investigation in Wilson..., where we identified the liberty interest at stake as the interest in obtaining fair criminal proceedings."). As Defendant's brief [2] noted, any of these elements can determine if circumstances indicate reckless or intentional failure to investigate that shocks the conscience: "(1) evidence that the state actor attempted to coerce or threaten the defendant, (2) evidence that investigators purposefully ignored evidence suggesting the defendant's innocence, (3) evidence of systematic pressure to implicate the defendant in the face of contrary evidence." *Amrine v. Brooks*, 522 F.3d 823, 833–35 (8th Cir. 2008) (summarizing cases that address the failure to investigate as a substantive due process violation). Crucially, the factors laid out in *Amrine* require the presence of only one of the elements, not all of them. *See Engesser v. Fox,* 993 F.3d 626, 630 (8th Cir. 2021) (examining the "purposefully ignored" factor when the other two factors were absent).

---

[2] Defendant seeks to minimize his actions by claiming that he was only "assisting" the investigation of Defendant Shute. ECF No. 26 at 12 ("Welle, in **assisting** a SLCPD investigator…") (emphasis in original). This allegation that Welle only "assist[ed]" is unsupported by the pleadings, and should not be considered this Court at this stage. As important, Defendant has failed to produce any case law holding that "assisting" the investigation exonerates the defendant. Finally, his claim is not true; it was *Well*e who singlehandedly intervened after the witness identified the wrong suspect. FAC at ¶ 66-69.

4

The foundational case in this Circuit, *Wilson v. Lawrence County,* 260 F.3d 946, 956–57 (8th Cir. 2001), is instructive. *Wilson* first recognized such a right "in situations where state actors have the opportunity to deliberate various alternatives prior to selecting a course of conduct." 260 F.3d 946, 956 (8th Cir. 2001). In *Wilson*, officers investigating a murder and arson identified a suspect who was mentally disabled and focused solely on him to the exclusion of any other witness. *Id.* A witness to the crime, himself suffering from mental deficiencies, later claimed that the police officers "tricked" him into identifying Wilson, the suspect. *Id*. at 260. As in this case, there was no "physical or circumstantial evidence linking" the plaintiff to the crime. *Id.* Ultimately, the defendant officers coerced the plaintiff into a false confession. *Id.*

Both here and in *Wilson*, the officer had access to coerced evidence that was obviously unreliable. The key witness in this case (and the only source of evidence against Mr. Gatlin) repeatedly claimed that he could not identify his assailant, told Officer Welle that he had brain damage, and identified the wrong suspect. FAC at ¶¶ 62, 63, 64. And in this case, the only source that connected the suspect at all was an FRT process that violated the department's own standards. *Id*. at ¶¶ 35-51. In both cases, the officers encountered a witness with clear mental deficiencies and coerced the witness into giving them the answer the officers wanted, despite clear indications that such evidence was unreliable and only obtained eight months after the crime occurred. *See Neil v. Biggers,* 409 U.S. 188, 201, 93 S. Ct. 375, 383, 34 L. Ed. 2d 401 (1972) (holding, given a seven-month delay between incident and identification, such an identification "would be a seriously negative factor in most cases."). Also here, Defendant Welle, acting more than eight months after the assault, had "the luxury of unhurried judgments and repeated reflections," making his behavior particularly egregious. *Wilson*, 260 F.3d at 957.

In another case, *Winslow v. Smith,* 696 F.3d 716 (8th Cir. 2012), the Eighth Circuit reversed the district court's grant of summary judgment on a claim for reckless investigation. In that case, investigating officers, acting years later, arrested and charged several suspects for a homicide. *Id*. at 725. The officers in *Winslow* ignored clear inconsistencies in the various witness reports, including a witness who claimed "she could not remember much" of the year of the crime because of drug use, and another witness who provided testimony only "[i]n response to a series of leading questions" from the officers. *Id*. at 724. In denying summary judgment, the Eighth Circuit noted that the defendants "systematically coached witnesses." *Id.* at 733. Also in that case, as in here, several officers working together used a photograph to secure an identification from "one of the more malleable witnesses." *Id.* The *Winslow* court concluded its analysis of the reckless investigation claim with a statement that could have been taken straight from Plaintiff's Complaint: "Defendants instead pressed ahead and continued to exert pressure on vulnerable witnesses to provide testimony that was not within those witnesses' personal memory." *Id* at 735. At summary judgment, the Eighth Circuit reversed the district court and instead found that because a factfinder could rule either way regarding the officers' recklessness, summary judgment was inappropriate. *Id.* at 734. The Court noted that while a factfinder could determine that it was an "aggressive but imperfect investigation," in which the a jury could rule in defendants' favor, it could also determine that a reckless investigation occurred, in which the investigators "forced vulnerable individuals" into testifying a certain way and "coached those individuals into giving false testimony that fit into the sheriff department's own narrative of events while ignoring evidence contrary, and perhaps fatal, to the department's theory." *Id.*

Defendant's brief seeks to break down each of Welle's unlawful actions into discrete decisions, none of which *individually* may rise to the level of reckless investigation. *See, e.g.,* ECF

6

No. 26 at 10 ("Referencing "complexion" and standing near a victim during a photo lineup cannot plausibly be characterized as a conscience-shocking claim."). But Defendant's tactic of isolating each of his errors and claiming that each of them, independently, was not reckless, ignores clear Eighth Circuit guidance, which looks at the cumulative actions of the investigating officer and not merely one given action. *See Winslow*, 696 F.3d at 734 (analyzing totality of defendant officers' actions). Plaintiff is not alleging that only Welle misused the FRT program, or just violated department policies regarding conducting a photo line-up, or ignored the assailant being identified as a homeless person known to frequent the area, or merely ignored the sole witness's identification of a suspect who looked nothing like Mr. Gatlin, instead coaching him on a second identification. Rather, *each* of Welle's actions cumulatively meets the bar of a reckless investigation.

Defendant Welle meets several *Amrine* elements:

- **"[E]vidence that investigators purposefully ignored evidence suggesting defendant's innocence":** Here, the identification of the wrong suspect (FAC at ¶ 64), the victim's brain damage (FAC at ¶ 17), the victim's repeated claims that he did not remember how his attacker looked (FAC at ¶¶ 20-21), the fact that the suspect was likely a homeless person that frequented the area and that that Mr. Gatlin was not homeless nor that person (FAC at ¶ 22) and the attenuated relationship between the surveillance photo and the photo of Mr. Gatlin (FAC at ¶¶ 24-51).

- **"Evidence of systemic pressure":** Defendant Welle acted with the other officers in a "systemic" manner by failing to report the victim's misidentification just as both Goodwin and Shute separately produced reports that uniformly omitted evidence of the same. FAC at ¶¶ 75-76. In the same way, Welle, Goodwin, and Shute all failed to document the fact that the victim told them that he had memory problems. (FAC at ¶¶ 54-64). The three officers each worked together to allow Welle to coach the witness, even though Defendant Goodwin was supposed to serve as a "blind administrator." FAC at ¶¶ 54-64. This is not a case in which a rogue officer makes a mistake—rather there was "systemic pressure" from multiple officers from multiple different departments, who worked in concert by failing to document their violation of their own departments' procedures. Perhaps if Welle and the other officers had been merely negligent, as Defendant suggests, the officers may have taken part in the coercive photo identification but documented such mistakes so that they could have been easily identified. However, the fact that these trained officers not only participated in such a coercive action but *covered up the evidence of it* is proof of more than mere negligence. *See Winslow*, 696 F.3d at 733 ("First, [the investigator] reported [a witness] listed [a different suspect] as a possible perpetrator, but there is no mention of [that suspect] in any recorded portion of [the investigator's] interrogation.").

7

- While the pleadings include no evidence that Welle **"attempted to coerce"** Mr. Gatlin, there is ample evidence that his actions at the photo line-up were coercive to the victim, who had already admitted that his memory was poor and had already identified the wrong person. FAC at ¶¶ 54-64.

The totality of the facts pled indicates that Defendant Welle's investigation work in the investigation rises to the level of recklessness, and his Motion to Dismiss Count II should be denied.

## II. Plaintiff has Alleged a Clearly Established Violation of his Constitutional Right to be Free of a Reckless Investigation.

Defendant's Motion to Dismiss briefly claims that Defendant Welle would not have understood that his actions violated the constitution, entitling him to qualified immunity. ECF No. 25 at 15. But both *Winslow* and *Wilson* make clear that Plaintiff's right to be free of a reckless investigation was clearly established as of 2021. The *Winslow* Court found that "[p]ursuant to *Wilson*, then, a due process right against a reckless investigation was clearly established in 1986." *Winslow,* 696 F.3d at 716. In reaching this conclusion, the Eighth Circuit did not rely on minute factual differences between *Winslow* and *Wilson*, but instead found *Winslow* broadly applied to put an officer on notice that such reckless investigations, like the one in the instant matter, were unlawful. Moreover, Defendant cannot claim that he was unaware of the recklessness of his own investigation when his own department's policies clearly instructed him that his actions were not permitted. *See* FAC at ¶¶ 40, 49, 79.

## III. Plaintiff's First Amended Complaint Sufficiently States a Claim for Malicious Prosecution (Count 3) Against Welle.

Defendant's sole grounds for dismissal on Plaintiff's malicious prosecution claim against Defendant Welle is that such a claim cannot stand on its own. ECF No. 26 at 16. But Defendant has not brought a claim solely for malicious prosecution: as his First Amended Complaint makes clear, he has also brought a Fourth Amendment claim (Count I), a due process claim (Count II),

8

and civil conspiracy claim (Count IV). Thus, Plaintiff has not alleged solely a malicious prosecution claim and has adequately pled a federal malicious prosecution claim against Defendant. *See Powers v. City of Ferguson*, 229 F. Supp. 3d 894, 904 (E.D. Mo. 2017) (denying motion to dismiss malicious prosecution claim where plaintiff alleged additional constitutional violations.)

IV. **Plaintiff's First Amended Complaint Sufficiently States a Claim for Civil Conspiracy (Count 4) Against Welle.**

Defendant's Motion to Dismiss raises several different grounds upon which the civil conspiracy should be dismissed, but none has merit.

First, Defendant claims that Plaintiff has not alleged sufficient facts to prove a conspiracy. ECF No. 26 at 17. While merely working together on an investigatory team is not itself sufficient to show conspiracy, the Eighth Circuit looks for evidence of "concerted activity toward an unlawful objective." *Livers v. Schenck*, 700 F.3d 340, 362 (8th Cir. 2012). Defendant's claim that Plaintiff's allegation is "conclusory" is itself a claim that is conclusory. Plaintiff's First Amended Complaint did not merely allege that Defendant Welle participated in a conspiracy, with no additional detail. Instead, Plaintiff made the following allegations, all of which allege "concerted activity" by Welle and the other officers:

- Welle and Shute violated department policies by mis-using the facial recognition program together and failing to follow the procedures given (FAC, ¶¶ 38-43);
- Despite bringing a "blind administrator" to the photo line-up, Welle immediately began talking to the witness as his colleagues watched, in violation of policy (FAC, ¶¶ 54-58);
- Welle and the other officers proceeded with attempting to question the suspect after the suspect had clearly and repeatedly claimed that he had memory loss (FAC, ¶¶ 16, 18, 20, 21, 63);
- Welle violated department policies by coaching a witness after he identified "wrong" suspect (FAC, ¶¶ 64-67);
- After Welle received the answer he wanted, Welle and the other officers left without questioning the witness further (FAC, ¶ 72);

- The other witnesses wrote reports that completely omitted Welle's gross violation of department procedures, even though Welle's actions violated clearly established best practices (FAC, ¶¶ 73. 76. 88);
- Welle and Shute disregarded clear evidence that the suspect was homeless, and chose to arrest Mr. Gatlin, who was not (FAC, ¶¶ 89, 112).

Such evidence, especially at this early stage and without discovery, sufficiently establishes the existence of a civil conspiracy claim to survive a motion to dismiss. *See Dean v. Cnty. of Gage, Neb.,* 807 F.3d 931, 940 (8th Cir. 2015) (finding sufficient evidence of conspiracy where plaintiffs produced "proof of questionable procedures."). *See also Burton v. St. Louis Bd. of Police Comm'rs,* 731 F.3d 784, 799 (8th Cir. 2013) ("The elements of a conspiracy are **rarely established through means other than circumstantial evidence**, and summary judgment is only warranted when the evidence is so one-sided as to leave no room for any reasonable difference of opinion as to how the case should be decided. The court must be convinced that the **evidence presented is insufficient to support any reasonable inference of a conspiracy**.") (emphasis added). Notably, Defendant's Motion to Dismiss does not even address the above allegations Plaintiff made in his Complaint to establish that a conspiracy took place; instead, Defendant simply labels the allegation as "conclusory" and moves on. This is strange as Defendant has access to the same video evidence that Plaintiff does. Plaintiff has alleged sufficient facts by which a jury could draw an inference of conspiracy against Defendant Welle, and Welle's motion to dismiss should be denied.

Defendant's Motion also claims that Plaintiff failed to allege that the officer acted "beyond the scope of their authority or for their own benefit." ECF No. 26 at 17-18. But such an allegation would only be necessary to defeat a conspiracy claim for ***intracorporate*** conspiracy, which is a conspiracy within a single organization (thus the *intra*). *See Barstad v. Murray County*, 420 F.3d 880, 887 (8th Cir. 2005) (citing *Garza v. City of Omaha,* 814 F.2d 553, 556 (8th Cir. 1987). Plaintiff has not alleged intracorporate conspiracy; rather Plaintiff has pled run of the mill

10

conspiracy where the conspiring officers were part of ***separate, distinct*** entities. *Franklin v. Saint Louis Cnty., Missouri*, 527 F. Supp. 3d 1060, 1074 (E.D. Mo. 2021) ("When two agents of **the same legal entity** make an agreement in the course of their official duties, their acts are attributed to their principal as a practical and legal matter.") (emphasis added). Plaintiff's argument about scope is without merit, because intracorporate conspiracy does not apply in a conspiracy between people from separate, distinct organizations.

Defendant also argues that the claim should be dismissed because a civil conspiracy must be premised upon the violation of a constitutional right. ECF No. 26 at 18. Plaintiff agrees, and concedes that if there were no constitutional claims, his conspiracy claim under § 1983 would fail. But Plaintiff has alleged additional underlying constitutional violations against Welle and others, and he need not show that Welle personally committed an underlying constitutional violation. *See Hall v. City of St. Louis,* 465 F. Supp. 3d 937, 945 (E.D. Mo. 2020) ("when others conspire with officers who committed the initial constitutional violation to cover it up, another, separate § 1983 conspiracy claim is alleged.") Because Plaintiff has pled constitutional violations, and Welle's involvement in such violations, Defendant's Motion to Dismiss the conspiracy claim against him should be denied.

**V.     Plaintiff Concedes that his Failure to Intervene Claim (Count V) Against Welle Should be Dismissed.**

Plaintiff concedes that the Eighth Circuit has not yet recognized a failure to intervene claim outside of the excessive force context. *Andrews v. Schafer*, 888 F.3d 981, 984, n. 4 (8th Cir. 2018).

**VI.    Defendant Welle's Motion to Dismiss his State Court Claims Should be Denied.**

    **A.     Defendant Welle is Not Entitled to Official Immunity.**

Defendant makes three separate arguments about being entitled to official immunity (ECF No. 26 at 21-25), each of which are essentially addressing the same issue. Welle is not entitled to

11

official immunity because there is sufficient evidence at this stage to find that his actions were done maliciously, which overcomes official immunity. Malice "consists of the intentional doing of a wrongful act without legal justification or excuse." *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 447 (Mo. 1986). A defendant acts with malice "when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty…" *Blue v. Harrah's N. Kansas City, LLC*, 170 S.W.3d 466, 479 (Mo. App. 2005).

There is sufficient evidence by which, at this stage, a fact finder could find that Welle's actions were knowingly contrary to his duty: Plaintiff alleged that Welle violated the policies of his own department in his use of the SMRT system (FAC at ¶¶ 24-51); that Welle violated department policies in conducting the photo line-up, including in asking the witness how certain he was (FAC at ¶ 69); that Welle disregarded the statement of a witness who selected a different suspect (FAC at ¶ 66); that the suspect the witness selected did not look like Mr. Gatlin (FAC at ¶ 45); and that the witness repeatedly told Welle that he had memory issues (FAC at ¶ 63). The department policies are in place to instruct officers on how to perform certain actions. Welle's malice can be inferred from the fact that he knew, and had been trained, how to correctly perform the right action but chose not to. A Missouri Court of Appeals case from 2005 deals with a factual circumstance in which a citizen brought a false arrest claim against a police officer. *Blue v. Harrah's N. Kansas City, LLC*, 170 S.W.3d 466, 480 (Mo. App. 2005). The plaintiff faulted the officer for disregarding the claim of another witness who told the officer that the plaintiff had not committed a crime. *Id*. at 479. The office himself through that the plaintiff looked like the suspect, and believed the plaintiff was being "intentionally deceptive." The *Blue* court held that "these facts create a genuine dispute about whether Officer Sweiger acted in bad faith or with malice, thereby precluding him from claiming official immunity." *Id.* at 480.

12

For the foregoing reasons, Defendant Welle is not entitled to official immunity.

### B. Probable Cause Did Not Exist, and Plaintiff has Adequately Pled Malicious Prosecution and False Arrest.

Defendant claims that the false arrest and malicious prosecution claims fail because there was probable cause for the false arrest. ECF No. 26 at 20-23. But taking all facts and inferences in favor the Plaintiff, the following facts were present to Welle as he investigated the crime:

- The assailant was homeless; yet, Mr. Gatlin had a home (FAC at ¶ 22);
- The "probe image" used by Mr. Welle on the SMRT program did not satisfy the requirement of the SMRT facial recognition program (FAC at ¶¶ 24-37);
- Welle did not use any additional investigatory method to connect his preferred suspect (Mr. Gatlin) to the scene of the crime (FAC at ¶¶ 43-51);
- The only eyewitness to the crime told Welle repeatedly that he did not remember what the suspect looked like (FAC at ¶ 63);
- When Welle visited the witness, he was at a rehabilitation center and told Welle that his memory was "crap," *Id.*;
- The eyewitness, M.F., then identified the wrong suspect—a man who looked nothing like Mr. Gatlin[3] (FAC at ¶¶ 64-65);
- Mr. Gatlin vehemently and unconditionally denied having anything to do with the incident, which had happened more than eight months previously (FAC at ¶ 85).

Based on the foregoing evidence, there was no probable cause to justify the arrest or prosecution of Mr. Gatlin. *See United States v. Evans,* 851 F.3d 830, 835 (8th Cir. 2017) ("The victim did not provide a positive identification of Evans sufficient to establish probable cause."). Moreover, "[a]s a general rule the defense of probable cause is a question of fact for the jury." *Blue v. Harrah's N. Kansas City, LLC*, 170 S.W.3d 466, 480 (Mo. App. 2005); *see also Vaughn v. Sears Roebuck & Co.,* 643 S.W.2d 30, 33 (Mo. App. 1982).

---

[3]   Defendant argues whether Welle's standing over M.F. after he identified the wrong suspect and coaching him should adequately be described as coercion. ECF No. 26 at 21. Plaintiff is entitled to all inferences at this stage, so of course he is entitled to the allegation that Welle coerced the brain-damaged and visibly scared M.F. But regardless of whether the testimony was coerced or merely coached, for the purpose of probable cause analysis, Welle had firsthand knowledge that M.F. had initially identified the wrong suspect—and that fact removes any possibility of probable cause, and whether it was "coercion" or mere "coaching" is immaterial.

### C.     Plaintiff pled a claim for malicious prosecution

Defendant seeks to dismiss the state court claim for malicious prosecution on several grounds: one is that there was probable cause to justify the prosecution (ECF No. 26 at 22-23); a second is that Gatlin was indicted (*id*.); the final argument is that there was no malice (*id*. at 24). Plaintiff has already addressed his arguments regarding probable cause and bad faith in the foregoing sections and will therefore only address Defendant's brief argument that Mr. Gatlin's indictment absolves Welle of any liability at this stage.

Welle concedes that an indictment by a grand jury can be rebutted "by evidence that false testimony was the basis of the charge and the falsity was discoverable upon reasonable investigation." ECF No. 26 at 23, quoting *Perry v. Dayton Hudson Corp.*, 789 S.W.2d 837, 841 (Mo. App. 1990). As this brief has discussed at length, Plaintiff alleges precisely that false information was the basis of the indictment of Mr. Gatlin. At the heart of this false information is the investigating officers' claim that M.F. identified Mr. Gatlin. He did not, as Plaintiff has sufficiently alleged and as recorded on bodycam footage. Rather, he told Welle and Shute repeatedly that he had no memory of the day. He was asked to recall an incident from more than eight months previously. He identified the wrong suspect at first and only identified the suspect Welle's wanted him to identify after Welle coached him into identifying Mr. Gatlin. These facts fly in the face of the probable cause identification, which alleged that Mr. Gatlin "was identified." Plaintiff has adequately rebutted the presumption of probable cause given the foregoing, and Defendant's motion to dismiss for malicious prosecution should be denied.

### D.     Plaintiff pled a claim for civil conspiracy (Count 12).

Defendant raises three arguments against Plaintiff's civil conspiracy state claim. ECF No. 26 at 24-25. Arguments about a meeting of the minds and about malice have been addressed above.

14

Defendant also argues that there are no factual allegations "*that any Defendant* committed an underlying tort." *Id.* at 25. Obviously, Plaintiff has alleged, with support, that Welle committed many torts. But, Welle has not attempted to argue that the *other defendants* did not commit a tort—in fact, at some points in his brief, he seeks to point the finger at the other officers. *See* ECF No. 26 at 12 ("Even if Welle was the lead investigator, which he was not…"). As Defendant admits, a claim can lie against Welle if he worked alongside other officers who committed a tort. *Id.* at 24. Because Defendants Shute and Goodwin have not argued that at this stage, the claims against them should be dismissed, the claims against them will necessarily go forward. And for the same reason, the conspiracy claim against Welle should go forward. *See Central Trust & Inv. Co. v. Signalpoint Asset Mgt., LLC*, 422 S.W.3d 312, 324 (Mo. banc 2014) ("…a civil conspiracy is a theory of vicarious liability that extends liability **to all members who agree to commit a tort, including those who did not personally engage in the tortious act.**") (emphasis added).

For the foregoing reasons, Plaintiff Christopher Gatlin respectfully requests this Court deny Defendant Matthew Welle's Motion to Dismiss.

Date: May 2, 2025

Respectfully Submitted,

**KHAZAELI WYRSCH LLC**
/s/ James R. Wyrsch
James R. Wyrsch, #53735MO
John M. Waldron, #70401MO
Javad M. Khazaeli, #53197MO
911 Washington Avenue, Suite 211
St. Louis, Missouri 63101
(314) 288-0777
(314) 400-7701 (Facsimile)
james.wyrsch@kwlawstl.com
jack.waldron@kwlawstl.com
javad.khazaeli@kwlawstl.com

15