UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER GATLIN, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 4:25-cv-00043-ACL |
| MATTHEW WELLE, et al. | ) |
| Defendants. | ) |

**PLAINTIFF'S OPPOSITION TO DEFENDANT
CITY OF ST. LOUIS'S MOTION TO DISMISS**

Defendant City of St. Louis has filed a Motion to Dismiss claims against it. ECF No. 23. Plaintiff Christopher Gatlin has alleged that the City provided officers unfettered access to its Facial Recognition Technology ("FRT") products without proper training, allowing Defendant police officers easy access to a system of unreliable identification that led to his arrest and incarceration for more than seventeen months. Because Mr. Gatlin has alleged sufficient facts showing that the City was deliberately indifferent at this stage, the City's Motion to Dismiss should be dismissed.

## FACTS

Defendants Matthew Shute and Matthew Welle and were investigating the assault of a man on a Metrolink platform in December 2020. Plaintiff's First Amended Complaint ("FAC"), ECF No. 3 at ¶¶ 12-23. Welle, who was employed by St. Louis Metropolitan Police Department, worked with Shute of the St. Louis County Police Department on the investigation. *Id.* at ¶¶ 2, 3, 15. Welle and Shute obtained video camera footage from a bus that was nearby the scene of the attack. *Id.* at ¶ 19. Welle and Schute provided the photo to local homeless shelters, which informed the officers that one of the suspects was likely homeless. *Id.* at ¶ 21.

1

After deeming the case closed for lack of leads in December, Shute and Welle decided more than eight months later to upload the bus surveillance photo into a facial recognition technology workstation owned by the City of St. Louis. *Id*. at ¶¶ 24-30. Neither Welle nor Shute had any training on how to use the facial recognition program. *Id*. at ¶ 34-35. The photo uploaded by Welle was blurry, taken from a distance, and taken from an angle above the suspect's face, in clear violation of national protocols for such a program. *Id*. at ¶ 36. The suspect's face was also obscured in the photo. *Id*. Because of the lack of training, Welle and Shute failed to make use of any safeguards that would have prohibited a false identification. *Id*. at ¶¶ 47- 47 (c). Based on the misuse of the facial recognition tool due to their lack of training, Welle became decided that Mr. Gatlin was the assailant, despite the fact that the two men had little in common physically. *Id*. at ¶ 46. Shute and Welle are white, and Gatlin is Black. FAC at ¶¶ 1,4.

Shute and Welle unilaterally decided that Gatlin was the correct suspect based in part on their own poor cross-racial identification of Gatlin as the suspect. *Id.* at ¶184. The City of St. Louis failed to train Welle on how to avoid mistaken cross-racial identifications. *Id*. at ¶ 188.

Defendant Welle took no other steps to verify Mr. Gatlin's involvement before Welle took six photos to a rehabilitation unit where the victim, M.F., lived. *Id*. at ¶ 55. Defendant Welle immediately began to talk to M.F., even though Welle and Shute brought a "blind administrator" who was supposed to interact with M.F. *Id*. at ¶¶ 54-57. Welle also hinted that the correct suspect was one of the six photos. *Id*. at ¶¶ 57-58. These are both violation of department and national best practices. *Id*. M.F. told the witnesses that he had suffered a traumatic brain injury because of the assault. M.F. told Welle and the other officers that his memory "[was] crap." *Id.* at ¶ 63. M.F. then identified a photograph which was not a photo of Mr. Gatlin. *Id.* at ¶ 64. This suspect looked

nothing like Mr. Gatlin. *Id*. at ¶ 65. This suspect looked nothing like Mr. Gatlin – especially as to complexion. *Id*. at ¶ 65.

Rather than accepting M.F.'s incorrect identification, Defendant Welle then began to push M.F. telling him to "think about the…complexion" of the assailant. *Id.* at ¶ 66. This violated national best practices and SLMPD general orders, which requires officers not to provide any feedback to the witnesses. *Id*. at ¶¶ 69, 192-194. M.F. relented and, on his second try, picked a person with a different complexion; Welle and the officers accepted his identification without further challenge and left. *Id*. at ¶ 72. This was how Welle obtained what he deemed a "positive" identification of Mr. Gatlin. The whole interaction is captured on bodycam.

Welle proceeded to issue a "Wanted" for the arrest of Mr. Gatlin, without doing any further investigation. *Id.* at ¶¶ 82-83. Shute and Welle arrested Mr. Gatlin on August 14, 2021. *Id.* at ¶ 84. Mr. Gatlin faced more than two years of prosecution, more than a year of incarceration, and experienced significant pain and suffering. *Id.* at ¶¶ 96, 107. The charges against him were eventually dismissed because he was innocent and should not have been charged in the first place. *Id.* at ¶ 107.

## **LAW**

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted). A plaintiff is only required to plead enough facts to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Cole v. Homier Distrib. Co*., 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). At this motion to dismiss stage, courts are to "draw all reasonable inferences in favor of the nonmoving party." *Coons v. Mineta,* 410 F.3d 1036, 1039 (8th Cir.2005).

A plaintiff may establish municipal liability under § 1983 by proving that his or her constitutional rights were violated by an "action pursuant to official municipal policy" or misconduct so pervasive among non-policymaking employees of the municipality "as to constitute a 'custom or usage' with the force of law." *Monell v. Department of Soc. Serv.*, 436 U.S. 658, 691 (1978). A municipality has "custom liability" under *Monell* when the plaintiff establishes:

> (1)    The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> (2)    Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> (3)    The plaintiff['s] injury by acts pursuant to the governmental entity's custom, i.e., [proof] that the custom was the moving force behind the constitutional violation.

*Ware v. Jackson Cty., Mo.*, 150 F.3d 873, 880 (8th Cir. 1998) (citations omitted).

The Eighth Circuit has recognized, however, that prior to discovery, a plaintiff "may not be privy to the facts necessary to accurately describe or identify" the policies or customs which caused the deprivation of their constitutional right. *Sagehorn v. Indep. Sch. Dist. No. 728*, 122 F. Supp. 3d 842, 867 (D. Minn. 2015) (quoting *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003)). Thus, the Court has held that a plaintiff is not required to identify the full scope of an alleged custom or policy to survive a motion to dismiss. *Id.* A plaintiff need only include "allegations, reference or language from which one could *begin to draw* an inference that the conduct complained of resulted from an unconstitutional policy or custom." *Teague v. St. Charles Cty.*, 708 F. Supp. 2d 935, 940 (E.D. Mo. 2010) (citing *Crumpley–Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004) (emphasis added). *See also Green v. City of St. Louis*, No. 4:19 CV 1711 DDN, 2020 WL 7056015, at *6 (E.D. Mo. Dec. 2, 2020) ("At a minimum, a complaint must allege facts which would support the existence of an unconstitutional

4

policy or custom.") quoting *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003)340 F.3d at 614.

      Not only have courts in the Eighth Circuit taken such a position regarding *Monell* liability, but courts around the nation have too. *Lipman v. Budish*, 974 F.3d 726, 749 n.11 (6th Cir. 2020) ("This differing procedural posture makes all the difference. While a plaintiff might not survive summary judgment where her only evidence of a custom of wrongdoing is the facts of her own case . . . the same cannot be said at the motion-to-dismiss stage, where it is all but impossible for the plaintiff to have secured evidence of misconduct with respect to other individuals."); *Owens v. Baltimore City State's Att'ys Off.*, 767 F.3d 379, 403 (4th Cir. 2014) ("Although prevailing on the merits of a *Monell* claim is difficult, simply alleging such a claim is, by definition, easier. . . . The recitation of facts need not be particularly detailed, and the chance of success need not be particularly high."); *Johnson v. Baltimore Police Dep't*, No. 19-cv-00698, 2020 WL 1169739, at *34 (D. Md. Mar. 10, 2020) ("In the context of *Monell* liability, it will often be the case that a plaintiff lacks specific details regarding the municipal actor's internal policies and training procedures before discovery. Although boilerplate allegations will not suffice, at the motion to dismiss stage, courts should not expect the plaintiff to possess a rich set of facts concerning the allegedly unconstitutional policy and the responsible policymakers"); *Estate of Osuna v. Cty. of Stanislaus*, 392 F. Supp. 3d 1162, 1174 (E.D. Cal. 2019) ("[T]the details of the alleged policy or custom . . . is a topic properly left to development through discovery. It is a rare plaintiff who will have access to the precise contours of a policy or custom prior to having engaged in discovery, and requiring a plaintiff to plead its existence in detail is likely to be no more than an exercise in educated guesswork.").

*Unconstitutional Custom/ Failure to Train re: FRT*

Plaintiff has alleged that Defendant City of St. Louis employs a custom of allowing their officers "unfettered use of facial recognition technology without supervision, guidance, or training." FAC at ¶ 170. Plaintiff has alleged further that this custom was "so widespread as to have the force of law." *Id.* Similarly, he has alleged that the City of St. Louis failed to train its officers in its use of facial recognition technology. *Id*. at ¶¶ 177-183. Functionally, the analysis is the same for these two claims.

Defendant incorrectly claims that a municipality cannot be held liable for a *Monell* claim unless there is a pattern of widespread unconstitutional practices. But this is not the state of the law. While notice is given heavy weight in determining deliberate indifference, *Atkinson v. City of Mountain View, Mo*., 709 F.3d 1201, 1216 (8th Cir. 2013), a plaintiff does not have to show "a pattern of constitutional violations." The Supreme Court has held that in some circumstances, deliberate indifference may be established when the consequences of the deliberate indifference are so "patently obvious" as to make prior instances unnecessary. *Connick v. Thompson*, 563 U.S. 51, 64, (2011). *See also Mettler v. Whitledge*, 165 F.3d 1197, 1205 (8th Cir. 1999) "[A] single incident **normally** does not suffice to prove the existence of a municipal custom.") (emphasis added). Rather, "where the need for more or different training is obvious and the inadequacy is likely to result in the violation of constitutional rights, a municipality is deliberately indifferent to the need for more training. a constitutional violation may be a highly predictable consequence of a municipality's failure to train. *See Bd. of County Com'rs v. Brown,* 520 U.S. 397, 409 (1997). Moreover, a "high degree of predictability" may support an inference that the municipality's deliberate indifference led to the "very consequence that was so predictable." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 409 (1997).

Defendant's Motion to Dismiss leans heavily on the fact that prior instances have not yet been pleaded. This is unsurprising at this stage, as the City has closely guarded details about its technology and training, making it all but impossible to know the specific details of either the City's training regimen or prior instances by which people have, like Mr. Gatlin, been unlawfully arrested because of the program. Despite the secrecy regarding the program, Plaintiff has made more than threadbare recitations of facts. As described below, he has alleged sufficient facts about the unfettered access given to all officers at this stage to render dismissal inappropriate.

Defendant is simply incorrect that Plaintiff "only made allegations relevant to his case and arrest." ECF No. 23 at 7. Plaintiff has alleged far more than just the facts underlying his own arrest and unlawful incarceration. He has alleged that the exploding field of facial recognition technology, identifies suspects with varying degrees of success. FAC at ¶¶ 24-28. He has put forth allegations around national standards related to FRT. *Id*. at ¶ 171. His FAC has discussed national studies that show the weaknesses of FRT and the way in which Black men like Mr. Gatlin can be most at risk of false identification. *Id.* at ¶ 28. Plaintiff alleged a department-wide program by which untrained officers are provided access to a technological device with serious risk of errors for Black men, who make up a significant percentage of the population of the City of St. Louis. *Id*. at ¶¶ 31-33. More than only alleging the facts of his case, Plaintiff has alleged nearly *all* facts that could possibly be known about the department's secretive use of FRT at this point, and dismissal should not be granted. Plaintiff also expects to find additional evidence of these systemic failures during discovery in this matter.

Given the foregoing, Plaintiff has alleged sufficient facts at this point to survive a motion to dismiss. The danger is in fact obvious in a program that allows officers unfettered access— without training—to a technology that may mistakenly identify a single suspect, an indeed did

identify the wring suspect in this case, from among hundreds of thousands. The danger is made clear in the case of Mr. Gatlin: because of the officers' lack of training, and the lack of safeguards put on the FRT program, it is in fact "highly predictable" that a case like Mr. Gatlin's would occur—in which an innocent man is arrested with no supporting evidence other than his slight facial similarities. *Brown,* 520 U.S. at 409.

Defendant also claims that Plaintiff has failed to allege that the City's failure is the source of his constitutional violation. In support, Defendant argues that there were "a multitude of steps" that occurred between Welle's use of the FRT and Mr. Gatlin's incarceration for more than 17 months. ECF No. 23 at 8. But Defendant produces no law to support its argument that having many steps in between two incidents breaks the chain of causation. That argument would be an inference that Defendant is not entitled to at the motion to dismiss stage. Moreover, the argument relies on a complete misreading of the Complaint. Plaintiff alleged that Welle obtained Mr. Gatlin's photograph through solely the improper use of FRT, and that once Welle obtained this faulty lead, it was the direct cause of Mr. Gatlin wrongful incarceration. FAC at ¶¶ 43-51. The fact that other incidents happened in between the FRT use and the arrest does not obviate the fact that the City's faulty practices of allowing unfettered access to FRT caused Mr. Gatlin's arrest. In fact, it is impossible to imagine how the defendant officers could have possibly developed Mr. Gatlin as a lead if they had not been provided such access to the FRT program that produced the photo of Mr. Gatlin.

Defendant's motion to dismiss Plaintiff's failure to train and custom claims should be denied.

*Failure to Train on Photo Line-ups*

For the reasons described above, dismissal at this time is unwarranted. The City of St. Louis is protective about its training and investigatory procedures, making access through media or public records request nearly impossible. *See Ball-Bey v. Chandler*, No. 4:18-CV-01364-SPM, 2024 WL 888396, at *7 (E.D. Mo. Feb. 13, 2024), appeal dismissed, No. 24-1417, 2024 WL 5440001 (8th Cir. Oct. 28, 2024) (detailing City of St. Louis's arguments regarding keeping filings from the public records because the filings describe investigatory techniques).

Plaintiff has alleged, as best he can at this point, the systemic failures of all three police officers as they conducted a photo line-up of M.F., the victim of a brutal assault who had been suffering from brain damage for nine months. FAC ¶¶ 52-72. Plaintiff has also alleged the manner in which Welle and the other officers flouted both national standards and the City of St. Louis's own best practices for conducting a photo line-up. *Id*. *See also* FAC ¶¶191-202. Defendant argues that the fact that policies exist shows that Welle could not have been poorly trained, but that is an argument that Defendant is not entitled to make at this point. Rather, the presence of a policy that Welle should have followed may also indicate the City's failures to train: that is, the City had policies on the books regarding how to conduct a photo line-up but failed to properly instruct and supervise its officers on how to carry out these vital procedures. *See Szabla v. City of Brooklyn Park, Minnesota,* 486 F.3d 385, 392 (8th Cir. 2007).

The City again misreads the complaint when it writes, "Plaintiff's Complaint is entirely void [*sic*] of any allegations that City failed to train its officers on conducting photo lineups." Of course, Plaintiff pleaded quite clearly that the City failed to train its officers on the correct method of photo lineups. *See* FAC at ¶ 197. ("In failing to train its officers on the correct methods of photographic lineups and both SLMPD and SLCPD were deliberately indifferent to the likelihood

9

that a person would be wrongly identified, arrested, charged, and incarcerated.") As for Defendant's claim that Welle violated his training and department policies, "A plaintiff may plead alternative claims for relief in the complaint." *Level 3 Commc'ns, LLC v. Illinois Bell Tel. Co.,* No. 4:14–CV–1080 (CEJ), 2014 WL 414908, at *6 (E.D.Mo. Feb. 4, 2014). Therefore, it is entirely appropriate at this stage for Plaintiff to plead both that Welle violated department procedures and that the City failed to train him.

Regarding deliberate indifference, Plaintiff has in fact pleaded that the City's failure to train its officers regarding photo line-ups was deliberately indifferent, and that such a failure made it "highly likely" that such a violation would take place. *See* FAC at ¶¶ 200-201 ("Given the common deployment of FRT, the common identification of suspects across race, and the need for detectives to use photo lineups, it is highly likely that the failures described above would lead to the constitutional violations of the sort suffered by Mr. Gatlin.") To support this, Plaintiff has alleged the detailed national standards promulgated by CALEA, one of the most renowned organizations nationally for certifying police departments in procedures. The fact that Defendant Welle so clearly flouted these CALEA standards is evidence of the City's failure to train. Moreover, the consequences of the City's failure—namely, Mr. Gatlin's seventeen months in jail—make evident that the need for such training is plainly obvious.

***Failure to Train on Cross-Racial Identification***

Similarly, Mr. Gatlin has adequately pleaded at this stage that the City has failed to properly instruct its officers regarding the severe dangers of improper cross-racial identification. FAC ¶¶ 184-190. As alleged earlier in the Complaint, Welle and Shute (who are white) unilaterally selected an image of Mr. Gatlin (who is a Black man with a dark complexion) and decided, without any supporting evidence, that he was the suspect. So attached were Welle and Shute to their hunch that

10

they disregarded clear evidence that Mr. Gatlin was not the suspect—most obviously, the fact that the brain-damaged witness identified the wrong suspect at a photo line-up and that other people had identified the picture as that of known homeless man in the area. FAC ¶¶22, 52-72. Had Mr. Welle been appropriately trained on the pitfalls of cross-racial identification, he may have recognized that his certainty that Mr. Gatlin was the correct suspect could be flawed. Plaintiff has also alleged the long-standing case law, dating back to the 1970s, that demonstrates that the City's failure to train its officers (most of whom are white) is proof that the City is deliberately indifferent. FAC at ¶ 185.

While Mr. Gatlin will likely find more specific evidence during discovery, the facts in the Complaint state a plausible claim for relief under *Monell*.

****

For the foregoing reasons, Plaintiff respectfully requests this Court deny Defendant City of St. Louis's Motion to Dismiss.

Date: May 1, 2025                                       Respectfully Submitted,

**KHAZAELI WYRSCH LLC**
/s/ James R. Wyrsch
James R. Wyrsch, #53735MO
John M. Waldron, #70401MO
Javad M. Khazaeli, #53197MO
911 Washington Avenue, Suite 211
St. Louis, Missouri 63101
(314) 288-0777
(314) 400-7701 (Facsimile)
james.wyrsch@kwlawstl.com
jack.waldron@kwlawstl.com
javad.khazaeli@kwlawstl.com