UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

CHRISTOPHER GATLIN,         )
         )
         )
    Plaintiff,         )     Case No.  4:25-CV-43-ACL
         )
   vs.         )
         )
MATTHEW WELLE, et al.,         )
         )
    Defendants.         )

## MEMORANDUM AND ORDER

Plaintiff Christopher Gatlin brought this action against Defendants Matthew Welle, Matthew Shute, Cody Goodwin, St. Louis County, City of St. Louis, and Surescan Technology, LLC.[1]  Plaintiff alleges violations of his constitutional rights under 42 U.S.C. § 1983, civil conspiracy under 42 U.S.C. § 1985, and various Missouri state law claims related to his arrest and incarceration for almost two years arising out of the alleged misuse of facial recognition technology.

Presently pending before the Court are the following motions: Defendant City of St. Louis' Motion to Dismiss Count 9 (Doc. 22); and Defendant Matthew Welle's Motion to Dismiss Counts 2-5 and 10-12 (Doc. 25).  These motions are fully briefed and ready for disposition.  Neither

---

[1] Plaintiff has voluntarily dismissed his claims against Defendant Surescan Technology, LLC. (Doc 31.)

Defendant St. Louis County nor their officers, Defendants Matthew Shute and Cody Goodwin, filed motions to dismiss.

## BACKGROUND[2]

Plaintiff Christopher Gatlin is a St. Louis resident.  He is African American.  Defendants Cody Goodwin and Matthew Shute are officers of the St. Louis County Police Department ("County").  Defendant Matthew Welle is an officer of the St. Louis City Police Department ("City").  Goodwin, Shute, and Welle are all white.  At the relevant time, Defendants Shute and Welle worked on a joint team of County and City detectives who investigated crimes on the MetroLink.

On December 7, 2020, two men assaulted a MetroLink security guard at the St. Charles Rock Road station in North St. Louis County.  One of the men ("Suspect 1") was a taller man of fair complexion; the other man ("Suspect 2") was shorter and appeared to be an African American man with a dark skin tone.  Gatlin had nothing to do with this assault.

On the day of the assault, County Police Officer Piscul went to the hospital to visit the victim ("Victim"), who told the officer that he "could not remember" what happened after the suspects began to assault him.  Victim had suffered a traumatic brain injury and Post-Concussion Syndrome, and struggled with cognition.  Detective Piscul went to visit Victim the following day, and Victim told Detective Piscul that he could not remember any information about the two suspects.  In the days following the assault, Defendants Shute and Welle retrieved footage from

---

[2] For purposes of this Motion, the Court takes the factual allegations in the Complaint (Doc. 3) to be true.  *See Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

the MetroLink train station and from a bus that the two suspects walked past after assaulting Victim.  On December 16, 2020, Shute again contacted Victim, who again reiterated that he was unable to provide assistance about his assault because he had been knocked out.  Years after the assault, Victim still experiences difficulty with problem solving and speech, and experiences ringing in his ear and throbbing in his head.  Defendants Shute and Welle contacted five local homeless shelters in December, and all five shelters stated that Suspect 2 looked familiar to them.  However, they were unable to locate further leads on either suspect.  In late December, Shute wrote in his report, "this case should be considered inactive unless further leads develop." (Doc. 3 at 4.)

On August 9, 2021—more than eight months later—Defendants Shute and Welle attempted to revive the case by uploading still photos from the bus surveillance video into the St. Louis Mugshot Recognition Technology ("SMRT") System.  The SMRT System relies upon facial recognition technology ("FRT"), which attempts to match similarities from an image of one face ( a "probe image") in order to find a possible match to a face in another photo, such as a mug shot.  The vast majority of images that make up the SMRT database are taken from local municipal jurisdictions, many of which have for years targeted poor and African American drivers.  As a result, the images largely consist of persons ticketed for traffic violations and are disproportionately filled with African American individuals.  Many of these individuals, like Gatlin, have not been found guilty of a felony or misdemeanor.

Defendant Welle uploaded a grainy surveillance photo of Suspect 2.  The image was blurry and it was taken both at a distance and from an angle above Suspect 2's face.  Suspect 2's

hooded sweatshirt covered part of his forehead and a medical face mask covered his chin. Defendant Shute wrote in the police report that the SMRT System "returned results physically matching" Plaintiff Gatlin.  No other investigative leads pointed to Gatlin and, until the SMRT report, Gatlin was not a suspect.

Based upon the photo of Gatlin that Defendants Welle and Shute located from use of the SMRT System, Shute created a photo lineup of six individuals.  Shute and Welle selected Defendant Goodwin to interview Victim and serve as a "blind administrator" of the photo lineup. A blind administrator is a common best police practice, as the blind administrator should not know which of the six photos is the suspect and therefore will not indicate anything suggestive to the witness.  The three Defendant officers visited Victim at a rehabilitation unit where he continued to receive treatment.  The photo lineup was videotaped on the Defendant officers' body cameras.  In violation of "blind administrator" practices, Defendant Welle (who knew the identity of Gatlin) immediately began to talk to Victim.  Welle strongly hinted to Victim that the correct suspect was in the lineup, in violation of practices and procedures.  He also allowed Victim to compare all six photographs at once, in violation of best practices requiring sequential presentation of photos.  Although all of the photos were of African American men, the men varied in many ways, such as the age of the subjects, the skin complexion of the subjects, and even the date of the photographs.

Victim was still visibly shaken and told the officers that he had been diagnosed with a traumatic brain injury because of the assault.  At the time of the photo line-up, he suffered from cognitive issues, speech issues, and decision-making problems.  In addition to his previous four

statements that he did not remember the identity of his assailants, Victim made the following

statements at the photo line-up: "I was in and out of consciousness" during the assault; "My

memory is crap…"; "But after the hit, I don't remember…"; and "After the hit, I remember

nothing."  *Id.* at 12.  Victim then identified a photograph of a person ("Photo 6") ***who was not***

***Gatlin***.  Victim stated: "I want to say it's him," pointing to Photo 6.  Additionally, Victim placed

Gatlin's photo into a pile of other photos that he had eliminated.  Photo 6 portrays an African-

American man who is considerably lighter-skinned than Gatlin.  The photo is clearly dated—

likely from the 1990s.

      After Victim made the identification of Photo 6, Welle walked over to Victim, stood over

him, and stated the following:

> Let's think about before the incident.  You went up and you talked to them a little
> bit.  Let's try to think about things that happened before the altercation with them.
> Maybe even before you initially went to talk to them.  Take a minute and kind of
> ponder it…Think about the characteristics of the guy, ***his complexion***, did he
> have anything about his hair, or the clothing he was wearing?

*Id.* at 12.  The reference to the "complexion" was a tip to Victim to select the darker-skinned

individual, which would be the photo of Gatlin.  As Welle stood over Victim and coached him,

Victim took Gatlin's photo off the pile of eliminated suspects.  Welle then stepped back from

Victim, but continued to coach him.  Defendants Goodwin and Shute did not interfere or stop

this coaching of the witness.  Victim then changed his prior statement and identified Gatlin as his

assailant.  After indicating that he "thinks" the suspect was Gatlin, Shute remarked, "It's the

eyes, probably."  *Id.* at 13.  Soon after Victim identified Gatlin as the suspect, the Defendant

officers stated, "O.K.!" and, unlike the prior identification of Suspect 6, they did not allow

Victim further time to deliberate or provide further coaching.  They instead asked Victim to sign the photograph of Gatlin and left.

After the line-up and identification of Gatlin, Shute falsified his police report by omitting Welle's involvement in the line-up.  He wrote, "Police Officer Goodwin advised Detective Shute that [Victim] had made a positive identification of [Gatlin] in the photo lineup as the man who assaulted him," incorrectly suggesting that Shute was not present for the line-up.  *Id.* at 13. Shute's use of the term "positive identification" falsely suggests a certainty in the identification that did not exist.  Shute's police report also failed to include the fact that Victim identified Suspect 6 first, that Welle interfered and coached Victim, and that Shute and Welle were present during the lineup.  Defendant Goodwin also drafted a police report of the incident that omitted these facts.

In the deposition of Victim in Gatlin's criminal case, Victim described Suspect 2 as follows: "African American gentleman.  Face, I don't [remember]."  *Id.* at 15.  When asked if he remembered any details about what Suspect 2 was wearing or his facial features, Victim stated "No."  *Id.*  Victim was unable to identify his assailant out of the six photographs when asked to do so at his deposition.  *Id.*

Shute and Welle issued a "Wanted" for the arrest of Gatlin, and took no other steps to investigate whether Gatlin was a suspect.  Based upon this Wanted, Shute and Welle proceeded to arrest Gatlin on August 14, 2021.  Gatlin declared his innocence when interrogated by Shute and Welle and stated that he did not go to that area of North County, nor did he generally ride the MetroLink.  Shute applied for a warrant for the arrest of Gatlin based on the facial recognition

and photo lineup.  In the probable cause statement, Shute omitted material facts such as Victim telling police officers on four separate occasions that he did not remember who assaulted him; Victim previously identified a different photograph; Welle coached Victim and instructed him to consider things like "complexion; the quality of the probe image was very low; and employees of homeless shelters had identified Suspect 2 as being a homeless person with which they were familiar yet Gatlin had never been homeless.  A judge signed off on Gatlin's warrant on August 15, 2021.  Gatlin was indicted by a grand jury on September 29, 2021.

Throughout the almost four years of Gatlin's prosecution, the Defendant officers failed to come forward with the exculpatory evidence of Gatlin's innocence.  Gatlin was jailed for more than a year and a half in the St. Louis County Justice Center, where he endured regular 23-hour lockdowns.  He had never previously been incarcerated for more than a few days.  Gatlin lost his job and any income for the entirety of his incarceration.  It was not until the County Prosecutor's Office finally produced the body camera footage of the photo line-up years after the incident that Gatlin's attorney was able to file a motion to suppress the photo line-up.  The motion was granted in the spring of 2024, nearly three years after Gatlin's first arrest.

The First Amended Complaint ("Complaint") asserts the following claims: (1) Count 1 alleges a Fourth and Fourteenth Amendment unreasonable seizure claim under § 1983 against Defendant Shute; (2) Count 2  alleges a Fourteenth Amendment reckless investigation claim under § 1983 against Defendants Shute, Welle, and Goodwin; (3) Count 3 alleges a malicious prosecution claim under § 1983 against Defendants Shute, Welle, and Goodwin; (4) Count 4 alleges a civil conspiracy claim under § 1985 against Defendants Shute, Welle, and Goodwin; (5)

Count 5 alleges a failure to intervene claim under § 1983 against Defendants Shute, Welle, and Goodwin; (6) Counts 6-8 allege claims against SureScan that have been voluntarily dismissed; (7) Count 9 alleges a municipal liability (custom and failure to train) claim under § 1983 against Defendants St. Louis County and St. Louis City; (8) Count 10 alleges a Missouri false arrest claim against Defendants Shute and Welle; (9) Count 11 alleges a Missouri malicious prosecution claim against Defendants Shute, Welle, and Goodwin; and (10) Count 12 alleges a Missouri civil conspiracy claim against Defendants Shute, Welle, and Goodwin.

Defendant City moves to Dismiss Count 9 of the Complaint for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6).  (Doc. 22.) Defendant Welle moves to dismiss Counts 2-5 and 10-12 for failure to state a claim upon which relief can be granted.  (Doc. 25.)  Plaintiff concedes that his failure to intervene claim set forth in Count 5 fails to state a claim but otherwise opposes the motions.

## LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "where the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Blomker v. Jewell*, 831 F.3d 1051, 1055 (8th Cir. 2016) (quotation omitted).  The facts alleged must "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  A complaint must offer more than "'labels and conclusions' or 'a formulaic recitation of the

elements of a cause of action'" to state a plausible claim for relief. *Iqbal,* 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint, even if it appears that "actual proof of those facts is improbable," *Twombly*, 550 U.S. at 556, and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief. *Id*. at 555–56; Fed. R. Civ. P. 8(a)(2). The principle that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions, however. *Iqbal,* 556 U.S. at 678 (stating "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). Although legal conclusions can provide the framework for a complaint, they must be supported by factual allegations. *Id.*

## DISCUSSION

As previously noted, two separate motions to dismiss are pending. The undersigned will address the motions in turn.

### I. City's Motion to Dismiss Count 9

In Count 9, Plaintiff alleges City[3] is liable for the alleged violation of Plaintiff's Fourth Amendment right to be free of unreasonable seizures, because the violation was caused by inadequate policies, failure to train officers, and a custom of acquiescence regarding deficient facial recognition practices.

---

[3] City is the employer of Defendant Matthew Welle.

Under § 1983, a municipality cannot be held liable "solely because it employs a tortfeasor." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). Rather, a municipality may be liable only for a constitutional violation that resulted from an official municipal policy, an unofficial custom, or a deliberately indifferent failure to train or supervise. *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). As noted above, Plaintiff alleges *Monell* liability based on both a custom and failure to train.

Defendant City moves to dismiss Count 9 for failure to state a claim, arguing that Plaintiff has not adequately pled sufficient facts to plausibly show that City had a custom that caused the deprivation of Plaintiff's constitutional rights, or that City failed to train its officers.

Plaintiff responds that, while he will likely find more specific evidence during discovery, the facts in the Complaint state a plausible claim for relief.

On July 17, 2025, Plaintiff filed a Notice of Supplemental Authority. (Doc. 37.) Plaintiff states that two recent filings in the Eighth Circuit Court of Appeals are relevant to City's Motion to Dismiss—*Murphy v. Schmitt*, 143 F.4th 914 (8th Cir. 2025); and *Troupe v. Young*, et al., 143 F.4th 955 (8th Cir. 2025). Defendant City filed a Response to Plaintiff's Notice of Supplemental Authority, stating that neither case will help Plaintiff survive the Motion to Dismiss. (Doc. 42.) The undersigned will discuss these authorities as they pertain to Plaintiff's arguments.

## A.    Custom

To state a claim for custom liability, Plaintiff must allege facts that demonstrate:

a) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by a governmental entity's employees;

10

b) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

c) That [he] was injured by acts pursuant to the governmental entity's custom, i.e.,that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013) (cleaned up).  Liability for an unconstitutional custom cannot arise from a single act.  *Id.*  "The pattern of unconstitutional conduct must be so pervasive and widespread so as to have the effect and force of law."  *Brewington v. Keener*, 902 F.3d 796, 801 (8th Cir. 2018) (cleaned up).

Here, Plaintiff alleges that City employs a custom of "allowing its officers to use the SMRT facial recognition technology program."  (Doc. 3 at 30.)  This practice of allowing officers "unfettered use of facial recognition technology [FRT] without supervision, guidance, or training was so widespread as to have the force of law."  *Id.*  Plaintiff alleges that the "standard practice among law enforcement agencies is for facial recognition searches to be run only by trained specialists, not by investigating officers."  *Id.*  Moreover, officers were "enabled to use this highly invasive and risky tool without any training or support."  *Id.*  Given the "publicly-known flaws of FRT, [City was] deliberately indifferent to the risk of false identification and false incarceration."  *Id.*  Plaintiff further alleges that City policies for use of FRT "left a host of factors unregulated."  *Id.*  For example, although the "SMRT procedures had several possible ways of double-checking an officer's work (such as the use of a trained expert and the ability to make an investigating officer describe the exact similarities in the photos)," City did not require such safeguards.  *Id.*  Plaintiff alleges that City's "custom of providing unfettered access to FRT

without any training or supervision was deliberately indifferent." *Id.*  Moreover, "given the well-known and well-documented failures of FRT," City was "or should have been on notice that such false positives were likely to occur." *Id.*  Plaintiff claims that he was injured by the "widespread custom and usage" of City.  *Id.*

Defendant City first argues, relying upon *Perryman v. City of Bloomington*, that Plaintiff fails to allege facts sufficient to demonstrate a continuing, widespread, and persistent pattern. 704 F. Supp.3d 961 (D. Minn. 2023).  Instead, Defendant contends that Plaintiff only pled allegations related to his case and Gatlin's arrest.  Defendant next argues that, even if Plaintiff could show there was a widespread pattern of unconstitutional conduct by City, Plaintiff has still failed to allege deliberate indifference to or tacit authorization of such conduct by City officials after notice of the misconduct.

Plaintiff responds that there are some circumstances in which deliberate indifference may be established when the consequences of the deliberate indifference are so patently obvious as to make prior instances unnecessary.  Plaintiff argues that he has alleged far more than just the facts underlying his own arrest and incarceration.  He states that he has alleged that the "exploding field of facial recognition technology, identifies suspects with varying degrees of success," and has discussed national studies that show the weaknesses of FRT and the way in which African American men like Gatlin can be most a risk of false identification.  (Doc. 3 at 4-5; Doc. 30 at 7.) Plaintiff argues that he alleged a department-wide program by which untrained officers are provided access to a technological device with serious risk of errors for African American men, who make up a significant percentage of the population of the City.  Plaintiff contends that he

12

has alleged all the facts known about the Department's secretive use of FRT at this point, and expects to find additional evidence during discovery.

In Reply, Defendant argues that Plaintiff only cites allegations regarding the use of FRT on a nationwide scale, but fails to allege any other incidents of the City engaging in the alleged custom. As such, Defendant contends that Plaintiff has not met the standard required for a *Monell* claim based on custom. The undersigned agrees.

Plaintiff's allegations are insufficient to establish a plausible *Monell* custom claim. In *Perryman*, cited by Defendant, the plaintiff arrestee was misidentified through the use of facial recognition software. 704 F. Supp.3d at 965. The plaintiff brought claims against the county under § 1983 for false arrest. He argued that the county's analysts relied on facial recognition software to improperly identify him based on an unofficial custom. *Id.* at 967. The Court held that the plaintiff failed to sufficiently allege an unconstitutional custom and therefore failed to state a claim for municipal liability against the county, when he relied "on his arrest—a single isolated incident—to support the existence of a custom." *Id.* The Court acknowledged that the plaintiff was not required to identify the full scope of an alleged custom at the motion to dismiss stage, but found an unconstitutional custom claim cannot be predicated on a "single incident." *Id.* at 968.

Like the plaintiff in *Perryman* Plaintiff fails to point to any other instances of unconstitutional misidentification by City through the use of FRT. *See also Troupe*, 143 F.4th at 974 (holding plaintiff failed to state a plausible custom claim when the "only facts in the Complaint that go to these unofficial policies are [plaintiff's decedent's] treatment"); *Quinn v.*

*Doherty*, 637 F. Supp.3d 647, 667 (D. Minn. 2022) ("Plaintiffs' specific allegations relate only to Plaintiffs' experience.  This isolated event does not establish a custom."); *Yang v. City of Minneapolis*, 607 F.Supp.3d 880, 898 (D. Minn. 2022) ("Alleging a single instance of misconduct is not sufficient to support an inference of a custom or unofficial policy of the City."); *Ball-Bey v. Chandler*, 415 F. Supp.3d 884, 895 (E.D. Mo. 2019) (collecting cases) (While "[t]he Eighth Circuit has not directly addressed the quantum of 'continuing, widespread, persistent' conduct a plaintiff must allege to satisfy the *Iqbal* standard in this context, it has held that isolated incidents do not suffice and that allegations of 'many' incidents do establish liability.").

Moreover, Plaintiff's allegations do not indicate notice by the City of a pattern of unconstitutional acts.  Instead, Plaintiff asserts the conclusory claim that City was "or should have been on notice" that false positives were likely to occur given the "well-known and well-documented failures of FRT."  (Doc. 3 at 30.)

Plaintiff directs the Court's attention to *Murphy*,  in which the Eighth Circuit recently considered for the first time the quantum of evidence needed to be pleaded at the motion to dismiss stage regarding a "narrow exception" to the fourth element of a First Amendment retaliatory arrest claim.   143 F.4th at 918 (Emphasis added).  The exception provides that "the existence of probable cause does not defeat a plaintiff's claim *if he produces objective evidence* that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been."  *Id.*  (emphasis added).  Murphy identified statements made by the officers that were "not in themselves objective evidence," but tended to bolster his

"allegations that officers rarely, if ever, arrest people for walking on the wrong side of the road but did so here based on his speech." *Id*. In holding the plaintiff had sufficiently pled enough facts to survive the motion to dismiss, the Court noted that § 1983 is a remedial statute, and as such, "[i]f plaintiffs cannot state a claim without pleading facts which tend systemically to be in the sole possession of defendants, the remedial scheme of the statute will fail, and the crucial rights secured by [the statute] will suffer." *Id.*

Plaintiff argues that, like the defendant in *Murphy*, City has sole possession of all discovery related to training and oversight over the facial recognition programs, and the rights secured by § 1983 cannot be vindicated if Plaintiff is "forced to provide hard evidence to support his claims at this stage." (Doc. 37 at 2.)

Plaintiff is not required to provide "hard evidence" to support his claims. The plaintiff in *Murphy* had to provide objective evidence to prove his First Amendment retaliatory arrest claim. That evidence was in the sole possession of the defendant. Here, Plaintiff is only required to *plead enough facts* to show he has a plausible claim of an unconstitutional custom of the City. Because he has not alleged sufficient facts to show a pattern of misidentifications or the City's knowledge of and deliberate indifference to such a pattern, Plaintiff has not met his burden.

Thus, Plaintiff has failed to state a claim of municipal liability based on any custom or policy.

### B.    Failure to Train

To state a claim for municipal liability under section 1983 for a failure to train or supervise, Plaintiff must plead: (1) notice of a pattern of unconstitutional acts committed by

subordinates; (2) deliberate indifference to or tacit authorization of those acts; (3) failure to take sufficient remedial action; and (4) proximate cause of the plaintiff's injury. *Livers v. Schenck*, 700 F.3d 340, 355 (8th Cir. 2012). A failure to train may serve as the basis for section 1983 liability where "the failure to train amounts to deliberate indifference to the rights of persons with whom the" supervisor's employees "come into contact." *City of Canton* , 489 U.S. at 388.

Plaintiff argues that City failed to train its officers on FRT, cross-racial identification, and photo line-ups. As to FRT, he alleges that the flaws and weaknesses of this technology were "knowable and known" at the time that Welle used the SMRT program, yet City took no steps to train its officers to avoid the pitfalls of facial recognition. (Doc. 3 at 31.) Plaintiff states that many publications existed that would have put City on notice that there was a serious risk of misidentification, and SMRT training documents even made this clear, yet City did not require its officer to undergo training before using this tool. *Id.* He alleges that in failing to train its officers on the use of FRT and allowing the officers to use the tool, City was deliberately indifferent to the likelihood that a person would be wrongly identified, arrested, charged, and incarcerated. *Id.* Plaintiff next argues that the flaws and weaknesses of cross-racial identification technology were knowable and known at the time that Welle and Shute used the SMRT program, yet the City took no steps to train its officers to avoid the pitfalls of facial recognition, including their own potential biases. *Id.* at 32. Plaintiff alleges that in failing to train its officers on cross-racial identification and allowing those officers to use this tool, City was deliberately indifferent to the likelihood that a person would be wrongly identified, arrested, charged, and incarcerated, and that these failures caused Plaintiff's arrest and incarceration. *Id.*

16

Finally, Plaintiff argues that the best practices regarding photo lineups were both knowable and known at the time Welle, Shute, and Goodwin conducted their line-up, yet all three officers allowed many violations of these practices.  *Id.* at 33.  Plaintiff alleges that in failing to train or under-training its officers on the correct use of photographic lineups, City was deliberately indifferent to the likelihood that a person would be wrongly identified, arrested, charged, and incarcerated.  *Id.*  Plaintiff concludes that in all the cited instances of failure to train—the use of FRT, use of cross-racial identification, and the use of photographic lineups—City failed to provide training in situations where the need for training on those topics was obvious.  *Id.* at 34.

Defendant first argues that Plaintiff's claims that City failed to train its officers on FRT and cross-racial identification fail because Plaintiff has not alleged any plausible facts requiring City to train its officers on FRT or cross-racial identification.  Defendant contends that even if Plaintiff sufficiently pled that City's training was inadequate, his claim still fails because Plaintiff has not adequately pled that City officials acted with deliberate indifference.  Defendant notes that Plaintiff alleges no other incidents of alleged harm as a result of City's alleged failure to train and the alleged failure to train was not so obvious as to constitute deliberate indifference. Lastly, Defendant argues that Plaintiff has not adequately pled that City's alleged deficiencies in FRT or cross-racial identification training were the cause of Plaintiff's harm.  As to photo lineups, Defendant argues that the Complaint lacks any allegations that City failed to train its officers on conducting photo lineups.  Instead, Defendant notes that Plaintiff alleges that Welle knew the best practices for photo lineups but did not follow them.  Defendant further argues that Plaintiff fails to allege that City was deliberately indifferent to its alleged failure to train on photo

lineups.  Defendant notes that Plaintiff alleges no other instances of City officers conducting photo lineups in a manner that results in mistaken identifications as to make it plainly obvious to officials there was a failure of training.

Plaintiff responds that he has alleged the detailed national standards promulgated by the Commission on Accreditation for Law Enforcement Agency ("CALEA"), "one of the most renowned organizations nationally for certifying police departments in procedures," and the fact that Welle "so clearly flouted these" standards is evidence of City's failure to train.  (Doc. 30 at 10.)  He argues that the consequences of City's failure to train—Plaintiff's seventeen months in jail—make evident that the need for such training is plainly obvious.

Plaintiff also relies upon *Troupe*, another recent Eighth Circuit decision.  In *Troupe*, the plaintiff's decedent died from treatable but undiagnosed acute leukemia while in custody at a St. Louis County jail.  143 F.4th at 961.  The district court[4] dismissed most of plaintiff's claims against the individual jail guard defendants based on qualified immunity, finding that plaintiff's "upon information and belief" allegations were insufficient to state a claim that each defendant personally violated the decedent's rights.  *Id.* at 967.  The Eighth Circuit reversed this decision, finding the plaintiff's "upon information and belief" allegations were sufficient because the "type of information pleaded in these allegations is the type that was within the possession and control of the defendants."  *Id.*  The Court noted that this was "especially true in this case, where the individual who could have supplied information obviating 'information and belief' allegations is

---

[4] United States District Court for the Eastern District of Missouri, Rodney W. Sippel, Senior District Judge.

deceased." *Id.*  The plaintiff acknowledged that she had access to some public records, but much of it was redacted and "would not provide important information solely in the possession and control of the defendants." *Id.* at 968.  The information sought was described as "vital pieces of information that go to the subjective knowledge of the defendants," and included "personal interactions with [the decedent] and internal discussions among the Jail staff regarding [the decedent's] condition." *Id.*

In addition to the claims brought against the individual officers discussed above, the plaintiff in *Troupe* brought *Monell* claims against the county.  The Eighth Circuit found that Troupe failed to allege sufficient facts to state a plausible claim for relief as to an unconstitutional policy or custom, because Troupe had not pleaded any factual allegations outside of her own decedent's "personal experiences over a one-month span." *Id.* at 974.  The Court, however, reversed the dismissal of Troupe's failure to train or supervise claim, finding the "upon information and belief" allegations sufficiently alleged that the county and its officials knew healthcare staff was not checking vital signs and that the county was not disciplining or otherwise supervising its healthcare staff to ensure the vital signs were being checked. *Id.* at 975.

Plaintiff argues that, like the plaintiff in *Troupe*, he has "alleged as much as can possibly be known at this stage, prior to any discovery." (Doc. 37 at 2.)  Plaintiff points to the following allegations in the Complaint: many publications existed as of August 2021 that would have put City on notice that there was a serious risk of misidentification of individuals that would lead to wrongful arrests; even SMRT training documents made clear that there was a serious risk of

misidentification; investigating officers were allowed to use the program rather than trained specialists; and City did not train its officers on SMRT despite the clear warnings, thereby exhibiting deliberate indifference to the likelihood that a person would be wrongfully identified. (Doc. 3 at 31.)  Plaintiff acknowledges that he has not alleged a pattern of widespread constitutional violations, but contends that the need for training was so obvious that he need not plead prior instances.

The Supreme Court has "left open the possibility that in a narrow range of circumstances, a pattern of similar violations might not be necessary to show deliberate indifference." *Connick v. Thompson*, 563 U.S. 51, 63 (2011) (internal quotations and citation omitted).  The Court provided an example of a city arming its officers with firearms and sending them into the community without training them on the constitutional limitations on the use of deadly force, which could constitute deliberate indifference given the high probability of violations of constitutional rights.  *Id.*

In *Perryman*, discussed above, the plaintiff arrestee argued that the county failed to properly train its employee analysts about the use of facial recognition software but alleged only the single incident of a constitutional violation.  704 F. Supp.3d at 968.  The District Court of Minnesota held the plaintiff's situation did not fall within the hypothetical described by the Supreme Court.  The Court explained that the plaintiff argued that more training about the technology was necessary, but he "does not dispute that the Hennepin County's Training Manual, unlike the hypothetical, contained specific directions about the use of the facial recognition technology." *Id.* at 969.  The Court continued that, while armed officers must

sometimes make split-second decisions with life or death consequences, "the Training Manual
prohibits the use of facial recognition technology to positively identify an individual in all
situations, leaving no room for discretion." *Id.* (internal citations omitted).  As a result, the Court
found that it was "not a situation where Hennepin County provided no guidance to its employees
or where the need for further training was 'so patently obvious.'" *Id.* (quoting *Connick*, 563 U.S.
at 64).

Here, Plaintiff alleges that the City entrusted its officers with unfettered use of FRT
*without providing any training*, despite the known serious risk of misidentification.  The
complete lack of training provided on the SMRT program combined with the permitted usage of
the program by investigating officers rather than analysts distinguishes the facts of the instant
case from those of *Perryman*.  Accepting these facts as true, Plaintiff has adequately alleged that
the need for FRT training was so patently obvious so as to fall within the hypothetical described
by the Supreme Court.  Given the high likelihood of a misidentification leading to the violation
of an individual's constitutional rights under these circumstances, Plaintiff need not allege a
pattern of similar violations to state a claim for relief.

In sum, the Court finds that Plaintiff's failure to train claim "rests on more solid ground
that the custom or policy claims."  *Troupe*, 143 F.4th at 975.  Plaintiff has made sufficient
factual allegations against City to state a plausible claim for failure to train on the use of FRT.
The same analysis applies to Plaintiff's argument that City failed to train on cross-racial
identification, and the Court finds that this claim survives as well.  Although the merits of these
claims should proceed to discovery, the undersigned points out the "often dispositive difference"

between reviewing dismissal at the summary judgment state compared to the motion to dismiss state. *Id.*

Plaintiff additionally argues that City failed to train on photo line-ups. Unlike Plaintiff's other failure to train arguments, Plaintiff does *not* allege that City provided *no training* on photo line-ups. Further, Plaintiff makes conclusory allegations regarding the officers' violation of "a host of policies and best practices regarding the vitally important issue of photographic lineups," but alleges no other instances of photo lineups conducted by City officers resulting in misidentifications. (Doc. 3 at 33.) For these reasons, the undersigned finds that Plaintiff fails to state a plausible claim for failure to train on photo line-ups.

Because Plaintiff has stated plausible *Monell* failure to train claims based on the use of FRT and cross-racial identification, City's Motion to Dismiss Count 9 is denied.


## II.    Defendant Welle's Motion to Dismiss

Defendant Welle moves to dismiss all the federal claims against him on the grounds of failure to state a claim and qualified immunity. He moves to dismiss the state claims against him based on failure to state a claim and the doctrine of official immunity.

### A.  Federal Claims

The Complaint alleges the following federal claims under 42 U.S.C. § 1983 against Defendants Welle, Shute, and Goodwin: reckless investigation (Count 2), malicious prosecution (Count 3), civil conspiracy (Count 4) and failure to intervene (Count 5).

Defendant Welle argues that these claims should be dismissed against him for failure to state a claim and under the doctrine of qualified immunity. Plaintiff concedes that the failure to intervene claim fails to state a claim upon which relief can be granted. As such, Count 5 will be dismissed. Plaintiff's remaining claims will be discussed in turn.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "To prevail against a claim of qualified immunity, a plaintiff must show (1) that the facts alleged or shown by the plaintiff make out a constitutional violation, and (2) that the constitutional right allegedly violated was 'clearly established.'" *Swearingen v. Judd*, 930 F.3d 983, 987 (8th Cir. 2019) (quoting *Pearson*, 555 U.S. at 232). The Court may address either question first. *Pearson*, 555 U.S. at 236.

Because the Court is addressing the issue of qualified immunity in a motion to dismiss, the answers to these two questions are entirely dependent upon what Plaintiffs allege in the Complaint. *See Dornheim v. Sholes*, 430 F.3d 919, 926 (8th Cir. 2005) ("A rule 12(b)(6) dismissal based on qualified immunity is appropriate 'when the immunity is established on the face of the complaint.'") (quoting *Whisman v. Rinehart*, 119 F.3d 1303, 1309 (8th Cir. 1997)). Thus, to prevail on their Motion to Dismiss based on qualified immunity, Defendants "must show that they are entitled to qualified immunity on the face of the complaint." *Bradford v. Huckabee*, 394 F.3d 1012, 1015 (8th Cir. 2005).

### 1. Reckless Investigation (Count 2)

In Count 2, Plaintiff alleges Welle conducted a reckless investigation in violation of Plaintiff's Fourteenth Amendment Due Process rights by standing coercively over Victim after he identified the wrong person, and suggestively coaching Victim after he initially identified the wrong person.  (Doc. 3 at 22.)  Plaintiff alleges that the Defendant officers' actions were intentional or reckless, thereby shocking the conscience.  *Id.* at 23.  He states that the Defendant officers, acting individually and in concert with malice and knowing that probable cause did not exist to prosecute Plaintiff, intentionally caused Plaintiff to be arrested, charged, and prosecuted for those crimes, thereby violating Plaintiff's clearly established right to be free of prosecution absent probable cause.  *Id.*  Plaintiff further alleges that the Defendant officers fabricated evidence, withheld and misrepresented exculpatory evidence, and failed to investigate in a manner that shocks the conscience, all of which resulted in an arrest and prosecution without probable cause.  *Id.*  He claims that the Defendants acted with deliberate indifference to Plaintiff's clearly established constitutional rights.  *Id.*

Courts have recognized that a reckless investigation can be a violation of due process. *See Wilson v. Lawrence County, Mo.,* 260 F.3d 946 (8th Cir. 2001).  To be liable under a reckless-investigation theory, Welle must have conducted a constitutionally deficient investigation—one that was so deficient, in fact, that it "shock[ed] the conscience." *Akins v. Epperly*, 588 F.3d 1178, 1183 (8th Cir. 2009); *see* U.S. Const. amend. XIV.  To meet this standard, a plaintiff must show reckless or purposeful misconduct, not mere negligence. *Engesser v. Fox*, 993 F.3d 626, 629 (8th Cir. 2021).  The Eighth Circuit has allowed claims of

this type to proceed when there is evidence that an investigator: (1) "attempted to coerce or threaten the defendant"; (2) "purposefully ignored evidence suggesting the defendant's innocence"; or (3) encountered "systematic pressure to implicate the defendant in the face of contrary evidence." *Akins*, 588 F.3d at 1184; *see also Johnson v. Moody*, 903 F.3d 766, 773 (8th Cir. 2018) (explaining that this is "a question of law to which we apply a rigorous standard").

Defendant argues that Plaintiff's allegations against Welle are inadequate to support a claim of failure to investigate rising to the level of a substantive due process claim under the Fourteenth Amendment. He contends that Welle's involvement in the investigation and photo lineup was not conscience-shocking. Defendant further alleges that a reasonable officer faced with the same circumstances would not have understood that there was a violation, as there is no clearly established right to be free of charges in these circumstances. Thus, Plaintiff argues that Count 2 should be dismissed based on the doctrine of qualified immunity.

Plaintiff responds that Welle's actions cumulatively meet the bar of a reckless investigation. He argues that the Plaintiff's allegations show that Welle purposefully ignored evidence suggesting Plaintiff's innocence, acted with the other officers in a systemic manner by failing to report Victim's misidentification, and coerced Victim at the photo lineup. Plaintiff further argues that Plaintiff's right to be free of a reckless investigation was clearly established as of 2021.

The Court finds Plaintiff stated a plausible substantive due process § 1983 claim against Welle for reckless investigation. In reaching this determination, the undersigned considered the totality of Plaintiff's factual allegations as described above and accepted them as true.

Moreover, the Eighth Circuit has held that "a due process right against a reckless investigation was clearly established in 1986." *Winslow v. Smith*, 696 F.3d 716, 739 (8th Cir. 2012).  As a result, Plaintiff's right to be free from a reckless investigation was clearly established in 2021.

Thus, Defendant's Motion to Dismiss Count 2 will be denied.

**2.  Malicious Prosecution (Count 3)**

In Count 3, Plaintiff alleges that Welle and the other officer Defendants maliciously and without probable cause caused Gatlin to be prosecuted, detained, and incarcerated for the assault of Victim.  (Doc. 3 at 24.)  Plaintiff states that based upon Victim's repeated statements that he did not know who assaulted him, Victim's misidentification of his assailant, Welle's obvious coercive coaching of Victim and no other evidence that would incriminate Gatlin, Defendants knew or should have known that Gatlin was innocent.  *Id.*  He alleges that Defendants nevertheless caused the commencement and continuation of proceedings against Gatlin.  *Id.* Plaintiff states that the charges against Gatlin remained pending from August 13, 2021, until March 14, 2024, when the Circuit Clerk of St. Louis County filed the order of *nolle prosequi* entered by the St. Louis County Prosecuting Attorney.  *Id.*

Defendant Welle argues that Plaintiff fails to state a claim because an allegation of malicious prosecution without a corresponding constitutional violation cannot sustain a civil rights claim under § 1983.

Plaintiff responds that he has not alleged solely a malicious prosecution claim and has adequately pled a federal malicious prosecution claim against Defendant Welle.

26

The United States Supreme Court has determined that malicious prosecution is actionable under the Fourth Amendment.  *See Thompson v. Clark*, 142 S.Ct. 1332, 1337 (2022).  To establish malicious prosecution, "[a] plaintiff must show that (1) the criminal proceeding was instituted without probable cause, (2) the defendant's motive in instituting the proceeding was malicious, and (3) the prosecution terminated in acquittal or discharge of the accused."  *Klein v. Steinkamp*, 44 F.4th 1111, 1115 (8th Cir. 2022).

Here, Plaintiff has alleged that Defendant Welle maliciously caused the commencement and continuation of proceedings against Gatlin without probable cause, and that the charges against Gatlin were dismissed.  Thus, he has stated a plausible federal malicious prosecution claim against Defendant Welle.

### 3.  Civil Conspiracy (Count 4)

In Count 4, Plaintiff alleges that Defendants Welle, Shute, and Goodwin conspired with each other to deprive Gatlin of his constitutional rights, including his right not to be deprived of liberty without due process of law, in violation of 42 U.S.C. § 1985.  (Doc. 3 at 25.)  He states that the officers acted together in furtherance of the conspiracy as follows: being aware of Victim's identification of a different suspect and failing to document this identification in any police report or probable cause statement; being aware of Welle's interference and coercive coaching of Victim and failing to document this interference; being aware that the photo line-up was in violation of their department's' policies and failing to remedy the problems or document these failures; Defendant Goodwin falsified statements in his police report; and Defendant Shute falsified statements and withheld material evidence in his probable cause statement.  *Id.*  Plaintiff

alleges that these acts and omissions of Defendants were the direct and proximate cause of Gatlin's injuries, because the Defendant officers knew or should have known that their conduct would result in the wrongful arrest, prosecution, and incarceration of Gatlin. *Id.* at 26.

In order to establish a civil conspiracy under 42 U.S.C. § 1985, a plaintiff must demonstrate "(1) that the defendants conspired, (2) with the intent to deprive him of equal protection of the laws, or equal privileges and immunities under the laws, (3) that one or more of the conspirators did, or caused to be done, any act in furtherance of the object of the conspiracy, and (4) that he was injured or deprived of having and exercising any right or privilege of a citizen of the United States." *Mendoza v. United States Immigration & Customs Enforcement*, 849 F.3d 408, 421 (8th Cir. 2017).

Defendant argues that Plaintiff fails to meet the first element of a conspiracy claim because he only makes conclusory allegations and does not allege any particular facts showing there was a meeting of the minds. He further argues that a civil conspiracy must be premised on the violation of a constitutional right and Plaintiff has not pled a viable constitutional claim against Welle or the other officers.

Plaintiff responds that the allegations in the Complaint, especially at this early stage and without discovery, sufficiently establish the existence of a civil conspiracy. He contends that he has alleged additional underlying constitutional violations against Welle and others.

The undersigned agrees that Plaintiff has sufficiently alleged the violation of a constitutional right against Welle, as discussed with regard to Counts 2 and 3. As such, the

Court will consider whether Plaintiff has adequately pled the first element of a civil conspiracy claim.

Allegations of a conspiracy must have sufficient specificity and factual support to suggest a meeting of the minds. *Manis v. Sterling*, 862 F.2d 679, 681 (8th Cir. 1988). Mere allegations that the parties had an "opportunity to communicate" or "acted in a manner that was consistent with the existence of a conspiracy" are insufficient to suggest a meeting of the minds. *Lawrence v. City of St. Paul*, 740 F. Supp. 2d 1026, 1049-50 (D. Minn. 2010). To allege a conspiracy, a plaintiff need not plead "that each participant knew the exact limits of the illegal plan," but the plaintiff must provide allegations "sufficient to support the conclusion that the defendants reached an agreement to deprive the plaintiff of constitutionally guaranteed rights." *White v. McKinley*, 519 F.3d 806, 816 (8th Cir. 2008) (internal quotation marks omitted). The elements of a civil conspiracy often are established through circumstantial evidence. *See id.*

Here, Plaintiff alleges that Welle and the other officers conspired with each other to deprive Gatlin of his due process rights. Plaintiff alleges that the following allegations in the Complaint show "concerted activity" by Welle and the other officers: Welle and Shute violated department polices by misusing the FRT program together and failing to follow procedures (Doc. 3 at p. 7); despite bringing a blind administrator to the photo line-up, Welle immediately began talking to the witness as his colleagues watched, in violation of policy (*id.* at 10-11); Welle and the other officers proceeded with attempting to question the suspect after the suspect had clearly and repeatedly claimed that he had memory loss (*id.* at 2-3, 11); Welle violated department policies by coaching a witness after he identified another suspect (*id.* at 12); and after Welle

received the answer he wanted from Victim, Welle and the other officers left without questioning the witness further (*id.* at 13).  (Doc. 29 at 9.)

Plaintiff's allegations that Welle and the other officer Defendants acted together to violate policies and then conceal these violations in their respective reports support a reasonable inference that the Defendants reached an agreement to initiate the prosecution of Gatlin.  These facts are sufficient at this stage to plausibly allege that the Defendants acted in concert to deprive Gatlin of his constitutional rights.

The Court, therefore, denies Defendant's Motion to Dismiss Count 4.

**B.  State Claims**

The Complaint alleges the following Missouri state claims against Welle: a false arrest claim against Welle and Shute (Count 10); a malicious prosecution claim against Welle, Shute, and Goodwin (Count 11); and a civil conspiracy claim against Welle, Shute, and Goodwin (Count 12).

Defendant Welle argues that these claims should be dismissed against him for failure to state a claim and under the doctrine of official immunity.

"Under Missouri law, the official immunity doctrine protects public officials from liability for injuries arising out of their discretionary acts or omissions ...."  *Reasonover v. St. Louis Cty.*, 447 F.3d 569, 585 (8th Cir. 2006) (citation omitted).  "[A] police officer's decision to use force in the performance of his duties is discretionary rather than ministerial."  *Davis v. White*, 794 F.3d 1008, 1013 (8th Cir. 2015) (citing *Davis v. Lambert–St. Louis Int'l Airport*, 193

S.W.3d 760, 763 (Mo. 2006)).  The same is true for the investigation of a crime and arrest.  *See Reasonover,* 447 F.3d at 585.

However, official immunity "does not apply to those discretionary acts done in bad faith or with malice."  *Id.*  "Acting with malice requires an actual intent to cause injury."  *Wealot v. Brooks*, 865 F.3d 1119, 1129 (8th Cir. 2017).  "A finding of bad faith embraces more than bad judgment or negligence.  It imports a dishonest purpose, moral obliquity, conscious wrongdoing, or breach of a known duty through some ulterior motive."  *Id.*  An allegation of "malicious motive or purpose or of conscious wrongdoing" is sufficient under Missouri law to preclude application of the official immunity doctrine.  *See Twiehaus,* 706 S.W.2d at 447.

As discussed above, Plaintiff has alleged that Welle acted maliciously in conspiring with the other officer Defendants to cause the commencement and continuation of proceedings against Gatlin without probable cause.  Accepting Plaintiff's factual allegations as true, the undersigned finds that, at this stage, Welle is not entitled to dismissal of Plaintiff's state law claims on the grounds that they are protected by official immunity.

The Court will next discuss Plaintiff's state claims in turn to determine if plausible claims for relief have been stated.

### 1.  False Arrest (Count 10)

In Count 10, Plaintiff alleges that Defendants Welle and Shoot "intentionally, willfully, unlawfully, maliciously, and without probable cause" caused Gatlin to be arrested, incarcerated, and prosecuted for the assault of Victim.  (Doc. 3 at 34.)  He states that Defendants knew that the only evidence to connect Gatlin to the assault was the identification by Victim, which was wrong

and coerced.  *Id.*  Plaintiff states that Defendants nevertheless suppressed that information by failing to document it and engaged in this course of conduct without concern for or consideration of Gatlin's perceived guilt or innocence.  *Id.* at 35.  Plaintiff alleges that, as a result of Gatlin's false arrest, he was wrongfully detained and incarcerated for a crime he did not commit and suffered physical and emotional damages.  *Id.*

Under Missouri law, "[a] plaintiff has a cause of action for false arrest if the plaintiff is confined, without legal justification."  *Blue v. Harrah's North Kansas City, LLC*, 170 S.W.3d 466, 472 (Mo. Ct. App. 2005).  Conversely, a legal justification is a complete defense to a false arrest or false imprisonment claim.  *Id.* at 480 (quoting *Edwards v. McNeill*, 894 S.W.2d 678, 683 (Mo. App. W.D. 1995)).  And "[t]he arrest of an innocent person by an officer empowered to make an arrest is justified if the officer has a reasonable belief that the person is guilty of the offense for which he is arrested."  *Id.*  A person can be liable for false arrest if he "encourages, causes, promotes, or instigates the arrest."  *Highfill v. Hale*, 186 S.W.3d 277, 280 (Mo. 2006).

Defendant argues that the alleged facts do not infer coercion of Victim by Welle. Instead, Defendant contends that Plaintiff has merely alleged speculative facts that Welle was near Victim after his initial identification and used the word "complexion," so should have known there was no probable cause for Gatlin's arrest.  Defendant further notes that Welle did not write the police report or probable cause statement.

Plaintiff argues that, taking all facts and inferences in his favor, Welle coerced the brain-damaged and visibly scared Victim.  He contends that the following facts alleged in the Complaint were present to Welle as he investigated the case, which demonstrates the lack of

probable cause: the assailant was homeless, yet Gatlin was not (Doc. 22 at 3); the "probe image" used by Welle did not satisfy the requirements of the SMRT facial recognition program (*id*. at 4-6); Welle did not use any additional investigatory method to connect his preferred suspect (Gatlin) to the scene of the crime (*id.* at 7-9); the only eyewitness told Welle repeatedly that he did not remember what the suspect looked like (*id.* at 11); when Welle visited Victim, he was at a rehabilitation center and told Welle that his memory was "crap" (*id.*); Victim then identified a lineup suspect, who looked nothing like Gatlin (*id.* at 12); and Gatlin vehemently denied having anything to do with the incident, which had happened more than eight months previously (*id.* at 16).

The Court finds that Plaintiff has alleged a plausible false arrest claim for this stage of the case. That is, Plaintiff has alleged that Welle initiated the arrest of Gatlin knowing that probable cause did not exist. Any purported pleading deficiencies can be addressed through discovery.

Thus, the Court denies Defendant's Motion to Dismiss Count 10.

**2. Malicious Prosecution (Count 11)**

In Ground 11, Plaintiff alleges a state law malicious prosecution claim. He states that Welle and the other officer Defendants maliciously and without probable cause or legal justification caused Gatlin to be prosecuted, detained, and incarcerated for the assault of Victim. (Doc. 3 at 35.)

Missouri law requires that Plaintiff establish: (1) commencement of an earlier suit against plaintiff, (2) instigation of the suit by defendant, (3) termination of the suit in plaintiff's favor, (4) lack of probable cause for the suit, (5) malice by defendant in instituting the suit, and (6) damage

to plaintiff resulting from the suit. *Edwards v. Gerstein*, 237 S.W.3d 580, 582 (Mo. 2007). Missouri courts are also clear that, "if a charge is initiated by indictment by a grand jury or by a prosecuting attorney on his sworn information and belief, either amounts to a *prima facie* showing that probable cause did exist for the prosecution." *Perry v. Dayton Hudson Corp.*, 789 S.W.2d 837, 841 (Mo. Ct. App. 1990) (internal citations omitted). "The *prima facie* showing is conclusive unless rebutted by evidence that false testimony was the basis of the charge and the falsity was discoverable upon reasonable investigation." *Id.*

Defendant argues that Plaintiff's claim fails because probable cause existed to prosecute the assault charges. He points out that Gatlin was indicted by a grand jury for the assault of Victim after Victim identified Gatlin in a photo lineup.

Plaintiff responds that, although Gatlin was indicted by a grand jury, he can rebut the presumption of probable cause with evidence that false information was the basis for the indictment. Specifically, Plaintiff argues that the Complaint alleges that the investigating officers' claim that Victim identified Gatlin was false and that this false identification was recorded on bodycam footage.

The Court finds Plaintiff has sufficiently alleged that false information was the basis of the indictment, and that the falsity was discoverable upon reasonable investigation. Thus, Plaintiff has pled a plausible claim for malicious prosecution at this stage.

Accordingly, Defendant's Motion to Dismiss Count 2 is denied.

### 3. Civil Conspiracy (Count 12)

In his final claim, Plaintiff alleges that Welle and the other officer Defendants worked together to commit the wrongful acts described in the Complaint, including the state law torts of false arrest and malicious prosecution.  (Doc. 3 at 36.)  He alleges the officers acted together in furtherance of the conspiracy as follows: being aware of Victim's identification of a different suspect and failing to document this; being aware of Welle's interference and coercive coaching of Victim and failing to document this; being aware that the photo line-up documented was in violation of their departments' training; and Goodwin and Shute falsified statements.  *Id.*  Plaintiff alleges that the acts and omissions by the officer Defendants were the direct and proximate cause of Gatlin's injuries, because the officers knew their conduct would result in the wrongful arrest, prosecution, and incarceration of Gatlin.  *Id.* at 37.

A Missouri civil conspiracy consists of (1) two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful acts, and (5) damages as the proximate result thereof."  *Edmonds v. Hough,* 344 S.W.3d 219, 225 (Mo. Ct. App. 2011) (quoting *Dickey v. Johnson,* 532 S.W.2d 487, 502 (Mo. App. 1976)).

Defendant argues that Plaintiff's Complaint lacks any factual allegations that any Defendant committed an underlying tort, and without an underlying tort, a civil conspiracy claim cannot be maintained.  He further argues that Plaintiff fails to allege sufficient facts that there was a meeting of the minds.

Plaintiff has alleged several underlying tort claims against Welle and the other officer Defendants.  The Court has found that Plaintiff has alleged plausible state law claims of false

arrest and malicious prosecution against Welle, and that he has sufficiently alleged a meeting of the minds between Welle and the other officer Defendants.  Thus, Defendant's Motion to Dismiss Plaintiff's claim for civil conspiracy is denied.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant City of St. Louis's Motion to Dismiss Count 9 (Doc. 22) is **denied.**

**IT IS FURTHER ORDERED** that Defendant Matthew Welle's Motion to Dismiss Counts 2-5 and 10-12 (Doc. 25) is **granted in part in that Count V is hereby dismissed**, and **denied in all other respects**.

**IT IS FURTHER ORDERED** that Defendant City of St. Louis's Motion to Stay (Doc. 50) is **found moot.**

*/s/ Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 15th day of October, 2025.