IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| CHRISTOPHER GATLIN, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:25-cv-00043 |
| ) | |
| MATTHEW WELLE, et al., ) | |
| ) | |
| Defendants. ) | |

**RESPONSE TO CITY OF ST. LOUIS' MOTION TO SUBSTITUTE PARTIES**

The State of Missouri, by and through undersigned counsel, submits the following reply to the City of St. Louis' Motion to Substitute. Doc. 53.

**INTRODUCTION**

Missouri Legislatures enacted Section 84.325 RSMo. on March 26, 2025, which effectually created a state-controlled St. Louis Board of Police Commissioners ("the Board"). Under the statute, the Board is to take control of St. Louis Metropolitan Police Department ("SLMPD"), and the State "shall accept responsibility, ownership, and liability as successor-in-interest for contractual obligations and other lawful obligations of the municipal police department." Section 84.325.3 RSMo. As such, lawsuits that were currently pending against SLMPD were transferred from the City of St. Louis' Counselor's Office to the Missouri Attorney General's Office. However, Judge Divine of the Eastern District heard argument in *Clark v. City of St. Louis*, et al., 4-21-cv-00788-JMD concerning a Motion to Substitute the Board for the City. Judge Divine ultimately denied the Motion to Substitute for a number of reasons, which kept the City in as a party. In an effort to be consistent across cases, the Attorney General's Office then moved to withdraw its second motion to substitute parties in this case. This change in position is a direct response to Judge Divine's

1

Order denying the proposed substitution of the Board for the City in *Clark*. However, the City now posits a new theory that Section 84.325.3 RSMo. transfers all liabilities to the State, and that the State itself should be substituted in the City's place. This is wrong for the reasons stated below.

## ARGUMENT

According to Federal Rule of Civil Procedure 25(c), "[i[f an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party." Further, "[t]he decision whether to substitute parties lies within the discretion of the trial judge and he may refuse to substitute parties in an action even if one of the parties so moves." *Froning's, Inc. v. Johnston Feed Service, Inc.*, 568 F.2d 108, n.2 (8th Cir. 1978).

The City's theory that the State is the real party of interest in this case rests on one subsection of the entirety of Chapter 84. When interpreting a state statute, federal courts must use the state's rules of statutory construction. *Behlmann v. Century Sur. Co.*, 794 F.3d 960, 963 (8th Cir. 2015). "The rules of statutory interpretation are not intended to be applied haphazardly or indiscriminately to achieve a desired result. Instead, the canons of statutory interpretation are considerations made in a genuine effort to determine what the legislature intended." *Ivie v. Smith*, 439 S.W.3d 189, 203 (Mo. banc 2014) (quoting *Parktown Imports, Inc. v. Audi of Am., Inc.*, 278 S.W.3d 670, 672 (Mo. banc 2009). "Statutory interpretation should not be hyper-technical, but reasonable and logical and should give meaning to the statute." *Id.* The Supreme Court affirmed this idea in *Bostock v. Clayton*, saying that the "Court normally interprets a statute in accord with the ordinary public meaning of its terms at the time of its enactment." 590 U.S. 644, 654 (2020).

Here, the City attempts to be hyper-technical in positing that the State is the real party in this case, relying on one subsection of the entirety of 84.325 RSMo. Section

2

84.325.3 RSMo. states that "[u]pon assumption and control by the board of police commissioners . . . the state shall accept responsibility, ownership, and liability as successor-in-interest for contractual obligations and other lawful obligations of the municipal police department." The plain reading of the statute does not suggest that the State is on the hook for every liability the City incurred as a result of its control of SLMPD. On the contrary, the language on Section 84.325 plainly indicates the legislature's intent that only liabilities that arise after the Board assumes control are transferred. However, as Judge Divine found in *Clark*, transferring no liabilities at all would effectually give no meaning to this statute. *Clark*, Doc. 212, p. 4. The plain reading of the statute would only transfer to the State contractual obligations and other lawful obligations. If the legislatures intended for all liabilities to transfer, it would have expressly stated as such. This argument is bolstered by House Bill 495, which summarized Section 84.325 RSMo. "The municipal police department shall transfer title and ownership of all indebtedness and assets and accept liability as successor-in-interest for contractual obligations of the police department." H.B. 495 (2025). Nowhere in the statute or the bill summary does it suggest "other obligations" can be construed as the State accepting lawsuit liabilities that the City incurred during its control of SLMPD. Additionally, the subsection preceding Section 84.325.3 RSMo. states that "any municipal police department . . . shall convey, assign, and otherwise transfer to the board title and ownership of all indebtedness and assets, including, but not limited to, all funds and real and personal property" to the Board. Section 84.325.2 RSMo. This bolsters the State's argument that legislatures clearly did not intended for every liability to transfer, but only liabilities such as debt, contractual obligations, assets, real and personal property, and similar obligations that the SLMPD incurs as a result of its day-to-day operations.

3

Additionally, the City took control of SLMPD in 2013. In that time, legislatures enacted Section 84.345.2 RSMo. which has since been repealed by § A, H.B. 495 (2025). Tellingly, Section 84.345.2 RSMo. specifically stated that "[f]or any claim, lawsuit, or other action arising out of actions occurring before the date of completion of the transfer . . . the state shall continue to provide legal representation . . . this subsection applies to claims, lawsuits, and other actions brought against any commissioner, police officer, employee, agent, representative, or any individual or entity acting or purporting to act on its or their behalf." Furthermore, the repealed statute separately listed other liabilities in Section 84.344.2 RSMo. that would also transfer (similar to the 2025 statute), such as "title and ownership of all indebtedness and assets, including, but not limited to, all funds and real and personal property held in the name of or controlled by the board of police commissioners." It is notable in the 2012 statute that legislatures expressly intended for the State to continue to provide legal representation, while in the current 2025 statute, legislatures are completely silent on the issue. Legislatures' silence suggest that it did not intend for the State to represent actions occurring prior to the Board taking control in March of 2025, and only the specifically enumerated liabilities transfer. If legislatures intended for pending lawsuits to transfer from the City to the State, it would have expressly stated as such as evident in the 2012 statutes.

The City's argument that "because the State will be obligated to pay any potential judgment or settlement in this case, the State is the real party in interest and should be the defendant." Doc. 54. But that is not true. Pursuant to Missouri Revised Statutes Section 105.726.3, the State's legal expense fund does not cover judgments rendered against the Board of Police Commissioners. The statute provides only for reimbursement of eligible liabilities from the legal expense fund, but only up to two million dollars split in equal shares between Kansas City and St. Louis. Eligible liabilities include final money

4

judgments against the Board—not the City. "Moneys in the state legal expense fund shall not be available for the payment of any claim or any amount required by any final judgment rendered by a court of competent jurisdiction against a board of police commissioners established under Chapter 84 . . . [e]xcept that the commissioner of administration shall reimburse from the legal expense fund the boards of police commissioners established under Chapter 84 for liability claims otherwise eligible for payment under section 195.711 paid by such boards of an equal share basis per claim up to a maximum of two millions dollars per fiscal year." Section 105.726.3 RSMo. Thus, the State will not be obligated to pay any potential judgment or settlement in this case as the Board is not a party.

      Further, the City must continue to appropriate expenses toward the maintenance of the police force governed by the Board, suggesting not all liability of SLMPD transfers to the State. "It is the duty of the municipal assembly or common council of the cities to make the necessary appropriation for the expenses of the maintenance of the police force governed by the board of police commissioners … such municipal assembly or common council shall appropriate a minimum sum equal to the following percentages." Section 84.160.3 RSMo. The percentages listed start at twenty-two percent, and then increase by a percentage point every year until 2028. Section 84.160.3(1)-(4) RSMo. Meaning, the City is not completely off the hook. It must continue to pay a substantial sum of money toward the operation of SLMPD.  This expressly states that the City is not completely off the hook of funding SLMPD, and that legislatures did not intend for the State to take full control and responsibility of SLMPD. The City continues to be heavily involved with SLMPD in such a way that it is impossible to say legislatures clearly intended every liability of SLMPD prior to the enactment of Section 84.325 in March of 2025 to transfer to the State.

5

Additionally, if the State were to be substituted, it would be fully entitled to a state sovereign immunity defense. As it stands, the City is not entitled to assert sovereign immunity because it is not considered an arm of the state. "Municipalities are considered entities of the state but are not entitled to sovereign immunity in all circumstances." *Blair v. City of Hannibal*, 194 F.Supp.3d 875, 881 (E.D. Mo. 2016). If liabilities of SLMPD are transferred to the State, then the State would have every right to assert a sovereign immunity defense that would bar every claim made against the City for a Section 1983 violation. Such an effect would fundamentally change the nature of the parties, which is not the purpose of Rule 25(c). "The rule expressly permits parties to continue in an action, even if they do not remain the real party in interest, as long as the cause of action itself survives the transfer to the new party." *ECLA Enterprises, Inc. v. Sisco Equipment Rental & Sales, Inc.*, 53 F.3d 186, 191 (8th Cir. 1995). In this case, Plaintiff brings a Section 1983 municipal liability claim against the City of St. Louis. Doc. 3. But if that claim was transferred to the State, then the State would assert a sovereign immunity defense, and effectually bar Plaintiff's claim. Permitting the State to substitute for the City would completely change the nature and relationship of the parties in such a way that the Plaintiff would be wholly prejudiced.

Lastly, the City claims that the substitution of the State for the City would be proper because it no longer has access to documents and personnel. That is simply not true. Documents and personnel are housed at SLMPD. The City, just as the State, can access that vital information through SLMPD staff.

WHEREFORE, for the reasons stated above, the State is not a proper party in this case, and respectfully request the Court to deny the City's Motion to Substitute.

        Respectfully Submitted,

        **CATHERINE L. HANAWAY**
        Missouri Attorney General

        */s/ Lucas Chapman*
        Lucas Chapman #76575MO
        Assistant Attorney General
        221 West High Street
        Jefferson City, MO 65101
        (573) 298-1764
        Lucas.Chapman@ago.mo.gov

        *Attorney for State*

## CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2025, the foregoing was filed electronically via the Court's electronic filing system and was served by operation of the CM-ECF system on all counsel of record.

        */s/ Lucas Chapman*
        Assistant Attorney General