**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTOPHER GATLIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:25-cv-00043-ACL |
| | ) | |
| MATTHEW WELLE, MATTHEW SHUTE, CODY GOODWIN, ST. LOUIS COUNTY, THE CITY OF SAINT LOUIS, AND AMAZON WEB SERVICES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT AMAZON WEB SERVICES, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS


**Page**

INTRODUCTION ..... 1

BACKGROUND ..... 2

A. M.F. Is Assaulted and the St. Louis Police Conduct a "Shoddy" Investigation. ..... 2

B. Plaintiff's Vague Allegations About Rekognition. ..... 4

LEGAL STANDARD ..... 5

ARGUMENT ..... 6

A. The Complaint Does Not Plausibly Allege That Rekognition Was Used in Plaintiff's Arrest. ..... 6

B. The Complaint Does Not Plausibly Allege That Any FRT Program Proximately Caused Plaintiff's Arrest. ..... 8

CONCLUSION ..... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................5

*Buck v. Union Elec. Co.*,
887 S.W.2d 430 (Mo. Ct. App. 1994)....................9

*Callahan v. Cardinal Glennon Hosp.*,
863 S.W.2d 852 (Mo. 1993) ....................8

*City of St. Louis v. Benjamin Moore & Co.*,
226 S.W.3d 110 (Mo. 2007) ....................6, 7, 8

*Healing Chair, Inc. v. Logan Logan & Watson*,
No. 4:22-CV-327 SRW, 2023 WL 183829 (E.D. Mo. Jan. 13, 2023)....................8

*Lawton v. Hyundai Motor Am., Inc.*,
734 F. Supp. 3d 904 (W.D. Mo. 2024) ....................8, 9

*Miller v. Redwood Toxicology Lab, Inc.*,
688 F.3d 928 (8th Cir. 2012) ....................5

*Silva v. Constr. & Abatement Servs., Inc.*,
238 S.W.3d 679 (Mo. Ct. App. 2007)....................8

*In re SuperValu, Inc.*,
925 F.3d 955 (8th Cir. 2019) ....................5

**Statutes**

Mo. Ann. Stat. § 575.080(1) ....................9

## INTRODUCTION

Plaintiff Christopher Gatlin's claims against Amazon Web Services, Inc. ("AWS") hinge on St. Louis police officers' alleged use of a facial recognition technology software ("FRT") called Rekognition. But the Second Amended Complaint, ECF 105 ("Complaint" or "Compl."), does not plausibly allege that Rekognition was the program that identified Plaintiff for further investigation. Rather, Plaintiff alleges that the police officers used a system specific to St. Louis—the St. Louis Mugshot Recognition Technology System ("SMRT" or "SMRT System")—to generate a match. The Complaint's assertion that "Rekognition wrongly identified Christopher Gatlin" is conclusory and unsupported by any factual allegations explaining how Rekognition relates to SMRT, whether Rekognition powered the specific search that identified Plaintiff, or what role, if any, Rekognition played in generating the match. Indeed, the Complaint acknowledges that, at the time of Plaintiff's arrest, there were "dozens of different FRT programs" available on the market and AWS had contractually required police to stop using Rekognition for criminal investigations. Plaintiff has not plausibly alleged any link between Rekognition and his arrest.

The Complaint's allegations also show that Plaintiff's injuries were caused by gross police misconduct—including a coerced photo lineup, falsified police reports, violations of police department policies, and conscious omissions from the probable cause statement—and not by whatever FRT program the St. Louis police officers might have used. Plaintiff recognizes that FRT programs are "tools" designed to provide investigating officers at most "a list of *possible* matches." FRT programs cannot definitively identify a suspect; the police must conduct a competent, professional, and independent investigation before arresting anyone. The Complaint does not plausibly allege that an FRT technology proximately caused Plaintiff's harm.

Because the Complaint does not plausibly allege either AWS's involvement in the identification or proximate causation, the claims against AWS should be dismissed.

## BACKGROUND

Plaintiff filed a Second Amended Complaint that added AWS as a defendant on August 13, 2026. (Compl.) The Complaint raises strict liability and negligence claims against AWS in Counts 6 (Strict Product Liability – Design Defect), 7 (Negligent Design), 8 (Negligent Failure to Warn), 9 (Negligent Training), and 10 (Negligence). (*Id.*) AWS treats the allegations in the Complaint as true for purposes of this motion only. But even accepting everything alleged as true, none of the allegations establish a link between AWS and Plaintiff's wrongful arrest and confinement.

### A. M.F. Is Assaulted and the St. Louis Police Conduct a "Shoddy" Investigation.

On December 7, 2020, two men assaulted M.F., a MetroLink security guard. (*Id.* ¶ 15.) M.F. sustained a traumatic brain injury during the assault. (*Id.* ¶¶ 18–19.) M.F. repeatedly told investigating officers that he "could not remember" the assault or information about his assailants. (*Id.* ¶¶ 18–20, 22–23.) Five homeless shelters reviewed surveillance footage and told the police that one of the suspects looked familiar, suggesting that at least one suspect was unhoused (Plaintiff was housed). (*Id.* ¶ 24.) Without any further leads, the police deemed the case inactive in late December 2020. (*Id.* ¶ 25.)

More than eight months later, St. Louis police officers Matthew Shute and Matthew Welle took a grainy, low-quality still from the surveillance video and uploaded it to SMRT. (*Id.* ¶¶ 26, 37.) The SMRT System used facial recognition technology to find possible similarities between photos. (*Id.* ¶ 27.) FRT programs are "inherently probabilistic," "typically display a list of possible matches," and "are not designed to produce, and are not capable of producing, a definitive match or positive identification." (*Id.* ¶ 29.) There were "dozens of different FRT programs" on the market by 2019. (*Id.* ¶ 71.)

St. Louis's SMRT System came with published guidance, "glaring warnings," and various safeguards to prevent false identification. (*Id.* ¶¶ 39–44, 48.) For example, published guidance warned officers that image quality is "the **most significant** factor in the overall performance of the SMRT system" and that surveillance camera images are generally unreliable. (*Id.* (emphasis in original).) SMRT System policies specified that poor resolution, facial obstruction, and closed eyes could make an image unreliable. (*Id.* ¶ 41.) Policies also warned that "SMRT is not a method of positively identifying an individual" and "should be followed up by actual police investigatory work." (*Id.* ¶¶ 50–51.) And SMRT offered various safeguards to further prevent false identification, including "Candidate Reports," "Match Report(s)," and expert analysis. (*Id.* ¶ 48.)

Despite these clear warnings, the image that Defendants Shute and Welle uploaded to the SMRT System was blurry, taken from a distance, and at an angle; the suspect's face was obscured by both a hooded sweatshirt and a COVID mask, and his eyes were not visibly open. (*Id.* ¶¶ 37, 42.) The officers also failed to use any of the multiple safeguards available to them "that would have prevented the false identification of Mr. Gatlin." (*Id.* ¶ 48.) Based on the officers' misuse of the SMRT System, SMRT "returned results physically matching" Plaintiff. (*Id.* ¶ 44.)

The officers' "shoddy police work" continued throughout the investigation. (*Id.* ¶ 47.) They moved directly from facial recognition to a photo lineup without conducting any corroborating investigation, contrary to SMRT guidance and national standards. (*Id.* ¶¶ 50–52.) During the photo lineup—conducted more than eight months after the assault—M.F. identified a different individual as his assailant and placed Plaintiff's photo into a pile of eliminated suspects. (*Id.* ¶ 104.) Rather than accepting this result, Defendant Welle—who as a non-blind administrator was supposed to have no involvement with the lineup—stood over M.F. and coached him to consider the suspect's "complexion." (*Id.* ¶¶ 106–107.) Only after this coaching did M.F. identify the Plaintiff as the

perpetrator. (*Id.* ¶ 110.) Plaintiff alleges that the lineup violated numerous departmental policies and national best practices, including requirements for sequential photo presentation, blind administration, and documentation of witness confidence. (*Id.* ¶¶ 92–112, 119.)

Defendant Shute then falsified his police report. He omitted Welle's presence at and interference with the lineup, M.F.'s initial identification of a different suspect, and M.F.'s repeated statements about his poor memory. (*Id.* ¶¶ 113–116.) Defendant Goodwin similarly drafted a report omitting these material facts. (*Id.* ¶¶ 116–117.) Defendant Shute then applied for an arrest warrant, swearing under penalty of perjury that "the defendant has been identified as one of the perpetrators of this offense" while omitting material exculpatory facts. (*Id.* ¶¶ 128–129.)

Plaintiff was arrested, indicted, and then jailed for more than a year and a half. (*Id.* ¶¶ 124, 132, 136.) The charges were dismissed when Plaintiff's attorney successfully moved to suppress the lineup. (*Id.* ¶ 147.)

### B. Plaintiff's Vague Allegations About Rekognition.

The Complaint contains only a few allegations about AWS and Rekognition, none of which establishes a plausible connection between Rekognition and Plaintiff's wrongful arrest.

AWS launched Rekognition in 2017. (*Id.* ¶ 53.) A year later, AWS allegedly gave St. Louis County a $750 credit, which St. Louis County used to upload approximately 500,000 mug shots to create a database. (*Id.* ¶¶ 58–60.)

Public debate about the use of FRT in criminal investigations intensified between 2018 and 2020. (*Id.* ¶¶ 62–74.) In June 2020, AWS placed a moratorium on law enforcement's use of Rekognition for criminal investigations. (*Id.* ¶¶ 78, 84.) AWS also modified its Terms of Service to make the change binding on users: "**50.9.1.** Amazon has implemented a moratorium on use of Amazon Rekognition's face comparison feature by police departments in connection with criminal

investigations." (*Id.* ¶ 87.) This moratorium does not apply to use of "Amazon Rekognition's face comparison feature to help identify or locate missing persons."[1] Ex. A, Section 50.9.

In September 2021, AWS sent the St. Louis County Police Department a $10.95 invoice for Rekognition for the period August 1 to August 31, 2021. (*Id.* ¶ 91.) The invoice does not say whether or how St. Louis used Rekognition in August 2021. Based on the invoice, Plaintiff alleges that "Rekognition wrongly identified Christopher Gatlin for the assault of M.F." (*Id.*)

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–56 (2007). To avoid dismissal, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. The plausibility analysis "is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *In re SuperValu, Inc.*, 925 F.3d 955, 962 (8th Cir. 2019) (cleaned up).

[1]Attached as Exhibit A is a copy of the AWS Terms of Service as updated on July 9, 2021, which has been obtained using the Wayback Machine. The Court can consider the AWS Terms of Service that were in effect when Plaintiff was arrested through the doctrine of incorporation by reference. *See Miller v. Redwood Toxicology Lab, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012) ("While courts primarily consider the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion, courts additionally consider 'matters incorporated by reference or integral to the claim …' without converting the motion into one for summary judgment."). AWS notes that the AWS Terms of Service in effect in July 2021 differ from the version cited in the Complaint. Specifically, the July 2021 terms did not include Section 50.9.1; the corresponding provision appeared in Section 50.9.

## ARGUMENT

Plaintiff alleges he was wrongfully arrested after St. Louis police officers "violated every police practice in the book." (Compl. at 1.) According to the Complaint, the officers ignored written guidance, procedures, and warnings about how to use St. Louis's SMRT System; "flagrant[ly]" violated photo lineup practices; and committed fraud to arrest and indict Plaintiff. The allegations against the police officer defendants and their employers are clear and provide fair notice of Plaintiff's claims against them.

But the Complaint contains *no* allegations that plausibly link Rekognition to Plaintiff's identification and subsequent wrongful arrest. Plaintiff alleges generally that the SMRT System relied on FRT but acknowledges that there are "dozens of different FRT programs" on the market. (*Id.* ¶ 71.) He also makes the conclusory allegation that Rekognition was "used as part of the SMRT program" and "wrongly identified Christopher Gatlin," but he does not explain how Rekognition functioned within SMRT or whether Rekognition generated the particular result at issue. (*Id.* ¶¶ 91, 189.) Plaintiff also has not plausibly alleged proximate causation against *any* FRT supplier. The Complaint instead attributes Plaintiff's arrest and prosecution to a series of intervening acts by law enforcement—including treating a candidate result as a positive identification, conducting an improper lineup, coaching the witness, and omitting material facts from reports and the probable-cause submission.

The Complaint therefore fails to state a claim against AWS, and the Court should grant AWS's motion to dismiss for failure to state a claim.

### A. The Complaint Does Not Plausibly Allege That Rekognition Was Used in Plaintiff's Arrest.

To state a claim for strict liability or negligence against AWS, Plaintiff must plausibly allege that the Rekognition service—as opposed to some other FRT—played a role in the incident.

*See, e.g.*, *City of St. Louis v. Benjamin Moore & Co.*, 226 S.W.3d 110, 115 (Mo. 2007) ("where the plaintiff seeks to hold the defendants liable on the basis that their products caused harm to the plaintiff, the identification requirement must be satisfied"). He has not done so.[2]

The Complaint alleges that on August 9, 2021, St. Louis police officers "upload[ed] still photos from the bus surveillance video into the St. Louis Mugshot Recognition Technology System ('SMRT System')." (Compl. ¶ 26.) It also alleges that the SMRT System "relies upon facial recognition technology." (*Id.* ¶ 27.) By the time of Plaintiff's arrest, there were "dozens of different FRT programs" on the market. (*Id.* ¶ 71.)

As to Rekognition, the Complaint alleges that AWS provided St. Louis County a credit for its use and supplied facial recognition technology that was somehow "used as part of the SMRT program." (*Id.* ¶¶ 53, 58, 189.) But the Complaint never alleges how Rekognition functioned within SMRT. Nor does it plausibly allege that Rekognition was the program that generated the match to Plaintiff or had any role in the specific search that the defendant officers conducted. These omissions are striking because, under the controlling AWS Terms of Service, St. Louis police ***were not allowed to use Rekognition for criminal investigations***. (*Id.* ¶¶ 78, 84, 87, 89.) Because there were "dozens of different FRT programs" available at the time, generalized allegations that the police used ***an*** FRT program to identify Plaintiff do not mean that they used Rekognition to do so. (*Id.* ¶ 71.) Missouri law requires more than a showing that a product or service "may have been present" where an injury occurred. *Benjamin Moore*, 226 S.W.3d at 115–16.

[2] There are several other hurdles that Plaintiff must surmount to state a viable claim, including establishing that Rekognition is a product subject to product-liability law. There is no need to address those issues at this stage because Plaintiff has not pleaded sufficient facts to show causation, which is an element of all his claims against AWS.

Paragraph 91's reference to an invoice from AWS does not alter the analysis. Plaintiff alleges that "Amazon continued issuing invoices to the St. Louis County Police Department, specifically for the use of Rekognition," and copies a portion of a $10.95 "invoice for August 2021, when Rekognition wrongly identified Christopher Gatlin for the assault of M.F." (*Id.* ¶ 91.) But the invoice does not reveal any connection to Plaintiff's arrest. (*Id.*) Nor does it show that the St. Louis police were using Rekognition in violation of the AWS Terms of Service, since police departments could still use "Rekognition's face comparison feature to help identify or locate missing persons." Ex. A, Section 50.9.

All of Plaintiff's claims against AWS require him to allege that Rekognition played some role in the St. Louis police's false identification. *See Benjamin Moore*, 226 S.W.3d at 115. Plaintiff has not done so. The Court should dismiss Plaintiff's claims against AWS on this basis.

### B. The Complaint Does Not Plausibly Allege That Any FRT Program Proximately Caused Plaintiff's Arrest.

Plaintiff's claims against AWS also fail because he does not plausibly allege that any FRT technology—Rekognition or otherwise—caused his wrongful arrest.

Proximate causation is an essential element of all of Plaintiff's claims against AWS. *See Lawton v. Hyundai Motor Am., Inc.*, 734 F. Supp. 3d 904, 911–12 (W.D. Mo. 2024) ("Proximate cause is required for claims of both negligence and strict liability" under Missouri law). "The causal connection cannot be based on speculation or conjecture." *Healing Chair, Inc. v. Logan Logan & Watson*, No. 4:22-CV-327 SRW, 2023 WL 183829, at *6 (E.D. Mo. Jan. 13, 2023) (granting motion to dismiss for failure to allege proximate cause). "But for" causation is not enough; instead, "the injury must be a reasonable and probable consequence of the act or omission of the defendant." *Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852, 865 (Mo. 1993). Third-party acts, "particularly when those acts are criminal in nature," can defeat proximate causation,

including at the motion to dismiss stage. *Lawton*, 734 F. Supp. 3d at 912 (granting motion to dismiss); *see also Silva v. Constr. & Abatement Servs., Inc.*, 238 S.W.3d 679, 682 (Mo. Ct. App. 2007) (granting motion to dismiss where third-party criminal act proximately caused the plaintiff's harm).

The only plausible interpretation of the Complaint is that St. Louis police officers proximately caused Plaintiff's false arrest and incarceration. The Complaint alleges that Defendants Shute and Welle ignored all written guidance, warnings, and best practices by (1) uploading a blurry, unreliable photo into the SMRT System to attempt to identify a suspect (Compl. ¶¶ 26, 37, 41); (2) treating the result as a positive identification rather than an investigative lead (*id.* ¶¶ 50–51); (3) failing to use available safeguards to prevent false identification (*id.* ¶ 48); (4) moving directly from facial recognition to a photo lineup without conducting a corroborating investigation (*id.*); (5) conducting the photo lineup in violation of departmental policies and national best practices (*id.* ¶¶ 92–112); and (6) coercing the victim into changing his identification after he initially selected a different individual (*id.* ¶¶ 104–110). (*See also, e.g.*, *id.* ¶¶ 39–43, 50–52.) The Complaint also alleges that the investigating officers engaged in criminal activity to cover up their misconduct by falsifying their police reports and committing perjury while applying for an arrest warrant. (*Id.* ¶¶ 113–117, 128–129); *see, e.g.*, Mo. Ann. Stat. § 575.080(1) (criminalizing the supply of false information "for the purpose of implicating another person in an offense").

These allegations show that a series of independent, allegedly intentional law-enforcement decisions made after the facial recognition search caused Plaintiff's arrest and prosecution. Plaintiff's own theory is that officers ignored warnings, misused the result, manipulated the lineup, and withheld material facts. These intervening acts of intentional misconduct are superseding causes that sever any possible causal connection between an FRT supplier and Plaintiff's injuries.

*See Buck v. Union Elec. Co.*, 887 S.W.2d 430, 435–36 (Mo. Ct. App. 1994); *Lawton*, 734 F. Supp. 3d at 912. Put simply, the Complaint attributes Plaintiff's injuries not to any issue with facial recognition software, but to the officers' alleged misuse of the search result and their subsequent misconduct. The Court should dismiss all claims against AWS on this independent basis.

## CONCLUSION

The Complaint does not plausibly allege a connection between Plaintiff's alleged injury and AWS. Further, the Complaint makes clear that overriding and egregious police misconduct broke any causal chain that could have existed. In light of the facts alleged, amendment would be futile, and AWS respectfully asks the Court to dismiss Counts 6, 7, 8, 9, and 10 of Plaintiff's Second Amended Complaint against AWS with prejudice.

Respectfully Submitted,

**THOMPSON COBURN LLP**

By:/s/Kevin C. McGinley
Kevin C. McGinley #58220 (MO)
Lindsay K. Gilmore, #72815 (MO)
Thompson Coburn LLP
1405 N. Green Mount Road, Suite 300
O'Fallon, IL 62269
P: 618 680 4200 F: 618 236 3434
kmcginley@thompsoncoburn.com
lgilmore@thompsoncoburn.com

*Attorneys for Defendant Amazon Web Services, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2026, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system to all counsel of record.

/s/Kevin C. McGinley